FILED
United States Court of Appeals
Tenth Circuit

March 24, 2015

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MAURICE ELON EDWARDS,

    Defendant - Appellant.

No. 14-7028

_____

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. 6:13-CR-00010-RAW-2)**
_____

Barry L. Derryberry, Research and Writing Specialist, Office of the Federal Public Defender, Tulsa, Oklahoma, (Julia L. O'Connell, Federal Public Defender, Office of the Federal Public Defender, Tulsa, Oklahoma, with him on the brief) for Defendant-Appellant.

Linda A. Epperley, Assistant United States Attorney, Office of the United States Attorney, Muskogee, Oklahoma, (Mark F. Green, United States Attorney, and Kyle Evan Waters, Assistant United States Attorney, Muskogee, Oklahoma, with her on the brief) for Plaintiff-Appellee.
_____

Before **BACHARACH**, **BALDOCK**, and **McHUGH**, Circuit Judges.
_____

**BALDOCK**, Circuit Judge.
_____

A jury convicted Defendant Maurice Edwards of a single count of Possession of

Controlled Substances with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1),

841(b)(1)(B)(viii), 841(b)(1)(D), and 18 U.S.C. § 2. On appeal, he asserts (1) the admission of an anonymous 911 call that mentioned him by name violated the Confrontation Clause, (2) the trial evidence and jury instructions that allowed him to be convicted as a principal constructively amended his indictment, and (3) the jury instruction on aiding and abetting omitted an essential element. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

On the afternoon of January 14, 2012, an anonymous female called McAlester, Oklahoma 911 and reported information to the dispatcher, Heather Howard. The call[1] proceeded as follows:

Dispatch: Police Department. This is Heather.

Caller: Um. Yeah. Um. Is there any way that we could, um,—I could make a report on something? Who could I speak with about it?

Dispatch: Okay. What kind of report and what's going on?

Caller: Okay. I just know that there is going to be a car coming in with a whole lot of drugs and I just wanted to let the appropriate authorities know.

Dispatch: Okay. Where are they coming from?

Caller: They're coming from Oklahoma City. They are going to take I-40 and they're gonna go down the Turnpike.

Dispatch: To where?

Caller: To McAlester. They're headed to McAlester, Oklahoma.

---

[1] This conversation actually took place in two separate phone calls. At one point, the caller was disconnected and the dispatcher immediately called her back using Caller ID.

Dispatch: Okay.

Caller:     But they're coming from Oklahoma City.

Dispatch: How do you know there's gonna be a bunch of drugs in it?

Caller:     Because I'm looking at them right now leaving.

Dispatch: Oh.

Caller:     They're heading that way.

***

Dispatch: Okay ma'am.  Okay.  You said they're gonna take I-40 into McAlester.  Do you know where they're coming in McAlester?

Caller:     Uh, no I don't know where they're coming in from but I know that they're—they take the turnpike and they come in through where that main street is.  Like that first exit in McAlester.

Dispatch: Uh huh.  Okay.  And who are these people?

Caller:     Um.  They're two black guys.

Dispatch: Do you know their names?

Caller:     Yeah.  One of them is Maurice Edwards and the other one is Tony Washington.

***

Dispatch: Did they just leave your house?

Caller:     No.  They are about to leave Oklahoma City.  They're packing up right now.

Dispatch: But, do they stay with you or do they stay next door to ya?

Caller:     Yeah.  They stay next door to me.

Dispatch: Okay.

3

Caller:     I just know where they're going.  They usually go every weekend and they stay down there.

Dispatch: Okay.  How do you know there's drugs?  Did you actually see the drugs?

Caller:     Yes.

Dispatch: Like what kind of drugs is it?

Caller:     Like pounds of weed and ice and just weed and meth.

Dispatch: Okay.  Do you have a vehicle description?  Can you see a tag number?

                                    ***

Caller:     . . . I couldn't get the tag number but all I know is, um, it's a gray Altima but I did not get the tag number.

                                    ***

Dispatch: Okay.  And does Tony live in Oklahoma City?

Caller:     Uh, Tony—Tony is from McAlester but he lives here I guess.

Dispatch: Okay.  Okay.  And it's a gray Altima four door?

Caller:     Yeah.

                                    ***

Caller:     It's a rental.

Dispatch: A rental?

Caller:     Yeah.

Dispatch: Okay.  And do you know where they're hiding the drugs?

Caller:     No I don't.

Dispatch: Where were they putting the bags at?

4

Caller:    In the trunk and in the front.  But the thing is that I really would not want them to know that it was like me that told you—

Dispatch: No.  No we wouldn't do that. We—your—

Caller:    But I gave you the phone numbers—I mean their names though.  I mean, like they're gonna know that I'm giving you their names.

Dispatch: No they won't.

Caller:    Okay.

Dispatch: They'll just do a—they'll just do a traffic stop.

Caller:    Oh, okay.

Dispatch: Yeah.  And then they'll run their ID's.

Caller:    Okay.

Dispatch: Is how they'll do it.  Um, can I transfer you to a detective?

Caller:    Yes.

Dispatch: Okay.  Hold on just a second.

***

[End of phone call]

Based on this information, McAlester Police Officer Chuck Sutterfield began looking for a gray four-door Nissan Altima.  At about 5:00 p.m., Officer Sutterfield saw a vehicle matching the description and followed it to a nearby apartment complex.  The vehicle parked in the complex and two men got out and walked to one of the apartments.  Although he did not immediately recall Edwards's name, Officer Sutterfield recognized Washington as the driver and Edwards as the passenger because he had gone to high

5

school with them. Officer Sutterfield then called for backup, including an officer with a certified K-9 narcotics dog. The dog alerted to the presence of drugs in the Altima. After listening to the anonymous 911 call and observing the narcotics dog alert next to the Altima, Detective Shawn DeLana procured a warrant to search the Altima. The parties stipulated that the drugs found in the Altima pursuant to this warrant amounted to about 33 grams of methamphetamine and 7.35 kilograms of marijuana.

Other evidence tied Edwards to the Altima generally and the drugs specifically. For example, Edwards's mother had rented the Altima because her car was in the shop and she testified at trial that she had loaned the Altima to Edwards. Moreover, the Altima contained a black Nike bag. This Nike bag contained a Wal-Mart receipt that was traced back to Edwards; it also contained 14 bricks of marijuana.

A grand jury issued an indictment charging Edwards as follows:

### COUNT ONE

**[21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii) and 841(b)(1)(D) and 18 U.S.C. § 2 - Possession of Controlled Substances with Intent to Distribute]**

On or about January 14, 2012, within the Eastern District of Oklahoma, the defendants, **ANTHONY DEXTER WASHINGTON, II, a.k.a. Tony Washington,** and **MAURICE ELON EDWARDS,** did aid and abet one another to unlawfully, knowingly and intentionally possess with the intent to distribute five (5) grams or more of actual Methamphetamine, a Schedule II controlled substance, and a mixture or substance containing less than 50 kilograms of Marijuana, a Schedule I controlled substance.

**All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B)(viii) and 841(b)(1)(D) and Title 18, United States Code, Section 2.**

(brackets and bold in original).

6

At trial, the government mentioned the anonymous 911 call in opening argument, and later presented the call to the jury as a recording and through the testimony of Dispatcher Howard. The district court overruled Edwards's last-minute objection to the presentation of this evidence, observing that "out of court statements are not hearsay when offered for the limited purpose of explaining why a government investigation was undertaken." The court also admonished the jury that it could consider Dispatcher Howard's testimony and the 911 call recording "only . . . as an explanation of why the government can commence an investigation, okay? You may not consider it for any truth of the matter asserted. Meaning you may not consider it for determining whether or not the defendants were transporting drugs, okay?" The government also discussed the call in its closing argument, pointing out that the call never mentioned "anyone else in that vehicle, just Tony Washington and Maurice Edwards." But the court again instructed the jury that it could only consider the 911 call to explain why the government investigation was undertaken.

In listing the essential elements of Edwards's crime, the jury instructions stated:

> The defendants are charged in Count One of the Indictment with aiding and abetting one another to commit a violation of 21 United States Code section 841(a)(1).
> This law makes it a crime to possess a controlled substance with the intent to distribute it. Methamphetamine and Marijuana are controlled substances.
> To find either defendant guilty, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
> *First*: the defendant knowingly and intentionally possessed at least one of the controlled substances as charged *or* the defendant knowingly and intentionally aided and abetted the other to possess at least one of the controlled substances as charged;

7

*Second*: the controlled substance was Methamphetamine and/or Marijuana; and

*Third*: the defendant possessed the substance with the intent to distribute it *or* the defendant aided and abetted the other to possess the substance with the intent to distribute it.

As to aiding and abetting, the jury instructions stated:

The Indictment charges a violation of 18 U.S.C. § 2. This law makes it a crime to intentionally help someone else commit a crime.

To find a defendant guilty of this crime, you must be convinced that the government has proved beyond a reasonable doubt that the defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help him.

After deliberating, the jury found "beyond a reasonable doubt that Defendant [Edwards] either possessed with intent to distribute *or* aided and abetted in the possession with intent to distribute" marijuana and 5 grams or more of methamphetamine.

## II.

Edwards raises three arguments on appeal. First, he argues the anonymous 911 call was testimonial hearsay, and thus, its admission at trial violated the Confrontation Clause of the United States Constitution. Second, he argues his indictment charged him only as an aider and abettor, not a principal, so the trial evidence and jury instructions which allowed him to be convicted as a principal presented the jury with an uncharged basis for conviction and thus constructively amended his indictment. Third, he argues the jury instructions failed to list as an essential element that, to find Edwards guilty as an aider and abettor, the jury must find beyond a reasonable doubt that someone else committed the charged crime. We address and reject each argument in turn.

8

## A.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. "Although a district court's evidentiary rulings are reviewed for abuse of discretion, whether admission of such evidence violates the Confrontation Clause is reviewed de novo." United States v. Townley, 472 F.3d 1267, 1271 (10th Cir. 2007).

The "primary object" of the Confrontation Clause is "testimonial hearsay." Crawford v. Washington, 541 U.S. 36, 53 (2004). The Clause does not bar the use of statements (even testimonial statements) that are not hearsay, i.e., that are offered for purposes other than establishing the truth of the matter asserted. Id. at 59 n.9 (2004); see also Tennessee v. Street, 471 U.S. 409, 414 (1985); United States v. Becker, 230 F.3d 1224, 1228 (10th Cir. 2000) ("Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. See Fed. R. Evid. 801(c). Testimony which is not offered to prove the truth of an out-of-court statement, but is offered instead for relevant context or background, is not considered hearsay."). And we have long recognized that "an out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken." United States v. Freeman, 816 F.2d 558, 563 (10th Cir. 1987).

Of course, "[a]scertaining the purpose evidence serves . . . is not an easy task." United States v. Hinson, 585 F.3d 1328, 1337 (10th Cir. 2009). But we need not grapple with that task here. Even assuming the evidence of the 911 call in this case was inadmissible hearsay, the admission of which violated the Confrontation Clause, "[s]uch

9

an error is harmless if the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the improperly admitted evidence is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the evidence was harmless error." Becker, 230 F.3d at 1230 (internal quotation marks and alterations omitted).[2]

Indeed, in both Becker and United States v. Cass, 127 F.3d 1218 (10th Cir. 1997), we held that statements offered as "background" were in fact inadmissible hearsay. Yet in both cases we concluded that the admission of these statements was harmless.[3] In Becker, we held the error harmless based on (1) the trial court's limiting instruction to the jury, (2) the wealth of other evidence of Becker's guilt, and (3) the "utter implausibility of Becker's proffered alternative explanation" for the presence of drugs at his residence. 230 F.3d at 1230–31. Similarly, in Cass, we held the admission of "scores of [hearsay] statements," many of which "were not accompanied by limiting instructions" was nevertheless harmless because the admissible evidence against Cass was itself "quite damning," and the defense's case was relatively weak. 127 F.3d at 1223–25.

As in Becker, the trial court here admonished the jury to consider the 911 call evidence only for the non hearsay purpose of explaining why the government

---

[2] The same harmless error analysis would apply if we instead determined the statements were not hearsay, but were nevertheless unduly prejudicial under Fed. R. Evid. 403's balancing test. See Becker, 230 F.3d at 1230 (Baldock, J., concurring).

[3] Similarly, we reviewed the admission of hearsay evidence in Hinson for plain error, and held that there was none, "as any error in the admission of this [hearsay] evidence did not affect Hinson's substantial rights," given the weight of the other evidence against him. 585 F.3d at 1338.

10

commenced its investigation, and not for any truth of the matter asserted. Moreover, as in both <u>Becker</u> and <u>Cass</u>, the admissible evidence against Edwards was quite damning. Officer Sutterfield saw Edwards get out of his mother's car, which itself smelled strongly of marijuana, right before the police found copious amounts of marijuana and meth in the car. Furthermore, a bag in the trunk of the car contained 17 bricks of marijuana and a receipt tied to Edwards, a bag at the foot of the passenger seat where Edwards had been sitting also contained marijuana, and the glove box in front of the passenger seat contained methamphetamine and drug paraphernalia. In light of this evidence, Edwards's proffered defense (that he had no idea drugs were in the car) is utterly implausible. Thus, we are satisfied that any error here was harmless beyond a reasonable doubt.

## B.

We turn now to Edwards's constructive amendment argument. "A constructive amendment results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." <u>United States v. Rosalez</u>, 711 F.3d 1194, 1210 (10th Cir. 2013) (internal quotation marks and alterations omitted); <u>see also</u> <u>Stirone v. United States</u>, 361 U.S. 212, 217 (1960) ("[A] court cannot permit a defendant to be tried on charges that are not made in the indictment against him."). Edwards argues his indictment was constructively amended because the indictment charged him only as an aider and abettor but the presentation of evidence at trial and jury instructions allowed the jury to convict him in the alternative as a principal.

11

Edwards never objected on these grounds below, so we review his claim for plain error.  United States v. Gonzalez Edeza, 359 F.3d 1246, 1250 (10th Cir. 2004).  "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects the defendant's substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  United States v. Rausch, 638 F.3d 1296, 1299–300 (10th Cir. 2011) (internal quotation marks and alterations omitted).

Edwards's claim fails on the first prong because no error occurred here.  In order to hold Edwards's indictment was constructively amended by the trial evidence and jury instructions that allowed him to be convicted in the alternative as a principal, we would first have to hold the indictment itself was insufficient to charge him in the alternative as a principal.  This we cannot do, as his indictment sufficiently charged him as both an aider and abettor and as a principal.

"We review the sufficiency of an indictment de novo."  United States v. Gama-Bastidas, 222 F.3d 779, 785 (10th Cir. 2000).  "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense."  United States v. Washington, 653 F.3d 1251, 1259 (10th Cir. 2011) (quoting Gama-Bastidas, 222 F.3d at 785).  "The test of the validity of the indictment is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards.  Further, when evaluating an indictment's sufficiency, we employ practical rather than technical considerations."  Id. (internal citation and quotation marks omitted).  "Moreover, when an appellant

12

challenges an indictment for failure to state an offense for the first time on appeal . . . the countervailing interest in judicial efficiency requires that tardily-challenged indictments be construed in favor of validity." Id. (internal quotation marks omitted). Indeed, "[i]f a defendant does not challenge an indictment until after a verdict or guilty plea, and if he does not assert prejudice, that is, if he had notice of the crime of which he stood accused, the indictment is to be read with maximum liberality." Gama-Bastidas, 222 F.3d at 786 (internal quotation marks omitted).

Edwards did not challenge his indictment below. However, on appeal he briefly mentions his Sixth Amendment right to notice, albeit in relation to the fourth prong (miscarriage of justice) rather than the first prong (error) of plain error. We therefore construe his indictment in favor of validity, but do not read it with maximum liberality. Construing Edwards's indictment in favor of validity, we conclude that it adequately charged him with possession with intent to distribute as an aider and abettor and, in the alternative, as a principal.

"First, the indictment sufficiently sets forth the elements of the offense charged." Washington, 653 F.3d at 1261 (internal quotation marks omitted). Both the body and the caption of the indictment cite 21 U.S.C § 841, and the body recites the elements of possession with intent to distribute, namely, "unlawful[], knowing[] and intentional[] possess[ion] with the intent to distribute" marijuana and methamphetamine. Moreover, the indictment's caption states that it charges "Possession of Controlled Substances with Intent to Distribute." See Washington, 653 F.3d at 1261 (explaining that, although "'the caption is not a controlling part of the indictment,' . . . we can 'us[e] the caption to

13

supplement and clarify the charging intent of the grand jury that is expressed in the body of the indictment.'" (quoting Gama–Bastidas, 222 F.3d at 787)).  Finally, we have no problem concluding that the indictment enables Edwards to assert a double jeopardy defense.  He makes no argument to the contrary, nor could such an argument fairly be made.  "This is especially true because the entire record, not just the indictment, may be referred to in order to protect against double jeopardy if a subsequent prosecution should occur."  Id. (internal citations and quotation marks omitted).  And, as Edwards concedes, the record establishes that he was tried for possession with intent to distribute, either as an aider and abettor, a principal, or both.

Edwards implies his indictment was insufficient because it charged him "*only* with aiding and abetting Anthony Washington to possess drugs with intent to distribute." Def.'s Br. at 19 (emphasis added).  But the indictment itself belies this contention.  The indictment states that Edwards and Washington "did aid and abet *one another* to unlawfully, knowingly and intentionally possess with the intent to distribute" marijuana and methamphetamine.  (Emphasis added).  "[A]iding and abetting is not an independent crime under 18 U.S.C. § 2; the statute provides no penalty, but merely abolishes the common-law distinction between principal and accessory."  United States v. Cook, 745 F.2d 1311, 1315 (10th Cir. 1984).  And we have long held that "an aider and abettor may be charged and convicted as a principal."  United States v. Rodgers, 419 F.2d 1315, 1317 (10th Cir. 1969) (citing Nance v. Baker, 400 F.2d 864 (10th Cir. 1968)).  As such, the fact that an indictment charges two defendants with aiding and abetting one another to commit a crime does not limit the government to a conviction based solely on a theory of

14

aiding and abetting. See, e.g., United States v. Rubio, 321 F.3d 517, 522 & n.4 (5th Cir. 2003) (holding that an indictment charged the defendants "both as principals and accomplices" where it charged them with "each aiding and abetting the other"). [4]

Construed in favor of validity, the language of Edwards's indictment establishes that there were at least three alternative means by which the grand jury believed Edwards could have committed the substantive offense: Either (1) Edwards aided and abetted Washington, necessarily making Washington the principal; (2) Washington aided and abetted Edwards, *necessarily making Edwards the principal*, or (3) both Edwards and Washington possessed with intent to distribute the drugs and therefore necessarily participated in the offense *making them both principals* and aiders and abettors.

---

[4] In Rodgers, we held that convictions based on indictments that charged all defendants with "aid[ing] and abett[ing] 'each other to instigate, connive and willfully attempt to cause a mutiny and riot at [a] penal and correctional institution' in violation of Title 18 U.S.C. §§ 2 and 1792" could not be sustained. 419 F.2d at 1317. But there it was clear "from the record and the presentation in this court that the purpose of the indictment was to charge the individual defendants as aiders and abettors and *not as principals*." Id. (emphasis added). Moreover, the indictments nowhere alleged that anyone actually instigated or caused the riot, rather, the cause of the riot was unknown. We therefore declined to sustain the defendants' convictions because "one cannot be guilty of aiding and abetting in the commission of a crime until it has been established that someone has committed that crime." Id.

Here, on the other hand, the indictment alleges that either Edwards, Washington, or both, "unlawfully, knowingly and intentionally possess[ed] with the intent to distribute" marijuana and methamphetamine, and the record and presentation in this court establishes as much. Moreover, the evidence presented at trial was clearly sufficient to establish that someone, whether Edwards, Washington, or both, committed the substantive offense. Thus, Rodgers in no way undermines our decision here.

15

In sum, the trial evidence and jury instructions that allowed the jury to convict Edwards as a principal did not amend his indictment because the indictment itself sufficiently charged him as both an aider and abettor and, in the alternative, a principal.

C.

Edwards's third and final challenge is to the jury instruction on aiding and abetting. Edwards argues that the aiding and abetting instruction omitted an essential element, namely, that someone else committed the charged crime. As with his constructive amendment argument, Edwards concedes that he did not object to the instruction below, and thus, that we review this challenge only for plain error.

As Edwards points out, the aiding and abetting instruction given at his trial varied from our pattern jury instructions, which require the jury to find:

*First*: someone else committed the charged crime, and

*Second*: the defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help him.

Pattern Crim. Jury Instr. 10th Cir. 2.06 (2011)

Here, on the other hand, the jury instructions provided that:

The defendants are charged in Count One of the Indictment with aiding and abetting one another to commit a violation of 21 United States Code section 841(a)(1).
***
To find either defendant guilty, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
*First*: the defendant knowingly and intentionally possessed at least one of the controlled substances as charged *or* the defendant knowingly and

16

intentionally aided and abetted the other to possess at least one of the controlled substances as charged;

*Second*: the controlled substance was Methamphetamine and/or Marijuana; and

*Third*: the defendant possessed the substance with the intent to distribute it or the defendant aided and abetted the other to possess the substance with the intent to distribute it.

Edwards argues that, because his jury instructions did not list as a standalone element of aiding and abetting the fact that someone else committed the crime, "[t]his enabled the jury to convict both defendants on the basis that they were aiders and abettors . . . without finding that anyone committed the charged crime." We disagree.

Even assuming the district court erred by not listing the fact that someone else committed the crime as a standalone element of aiding and abetting, any such error is not plain. For one thing, district courts are by no means required to follow pattern jury instructions verbatim. See United States v. Lofton, 776 F.2d 918, 922 (10th Cir. 1985) ("While pattern instructions provide valuable guidance to the trial courts, over-reliance may produce instructions unsuited to the particular case."). On the other hand, the law "is clear that before one can be convicted as an aider and abettor, the jury must first find that the substantive offense has been committed." United States v. Morris, 612 F.2d 483, 496 (10th Cir. 1979) (footnote omitted); Rodgers, 419 F.2d at 1317. But whether the jury instruction here omitted that element is far from clear. Indeed, Washington and Edwards were the only defendants in this case. As such, we fail to see how a jury could find beyond a reasonable doubt that Edwards "knowingly and intentionally aided and abetted *the other* [Washington] to possess at least one of the controlled substances as charged" and "aided and abetted *the other* [Washington] to possess the substance with the intent to

17

distribute it," without necessarily finding beyond a reasonable doubt that *the other*, Washington, committed the substantive offense of possession with intent to distribute. Moreover, because under these jury instructions the jury had to find that Washington committed the substantive offense before it could find Edwards aided and abetted Washington to commit the crime, or vice versa, we fail to see how Edwards's substantive rights could have been affected by not listing this finding as a standalone element.

Given that Edwards's indictment was sufficient to charge him as both an aider and abettor and, in the alternative, as a principal, and because any error in his aiding and abetting instruction was not plain, we have no problem affirming Edwards's conviction based on the jury's finding beyond a reasonable doubt that he "either possessed with intent to distribute *or* aided and abetted in the possession with intent to distribute" marijuana and 5 grams or more of methamphetamine. See Sullivan v. Bruce, 44 F. App'x 913, 915 (10th Cir. 2002) ("It is settled law that when a single crime can be committed by various means, the jury need not unanimously agree on which means were used so long as they agree that the crime was committed.").[5]

Accordingly, Edwards's conviction is AFFIRMED.

---

[5] Finally, because Edwards's indictment was in no way constructively amended, his argument that any error in his aiding and abetting instruction should be considered cumulatively with his constructive amendment claim fails.