**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 22, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

    No. 14-7017

ANTHONY DEXTER WASHINGTON,
II, a/k/a Tony Washington,

    Defendant - Appellant.
_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:13-CR-00010-RAW-1)**
_____

Neil Darin Van Dalsem, Taylor, Ryan, Minton, Van Dalsem & Williams, P.C., Tulsa, Oklahoma, for Defendant-Appellant.

Linda A. Epperley, Assistant United States Attorney, (Mark F. Green, United States Attorney, and Kyle Even Waters, Assistant United States Attorney, with her on the brief) Office of the United States Attorney, Muskogee, Oklahoma, for Plaintiff-Appellee.
_____

Before **LUCERO**, **BACHARACH**, and **MCHUGH**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

This appeal grew out of a car trip from Oklahoma City to McAlester, Oklahoma. The driver was the defendant, Mr. Anthony Washington; the

passenger was his friend, Mr. Maurice Edwards. The car was a rental borrowed from Mr. Edwards's mother.

Inside the car were roughly 7.5 kilograms of marijuana and 28 to 29 grams of methamphetamine. Upon discovering the drugs, authorities charged Mr. Washington and Mr. Edwards with (1) possession of controlled substances with intent to distribute and (2) aiding and abetting that offense. The jury found both men guilty, and the court entered a judgment of conviction for possession of controlled substances with intent to distribute.

The two men appealed, and we have affirmed Mr. Edwards's conviction. *United States v. Edwards*, __ F.3d __, No. 14-7028, 2015 WL 1296624 (10th Cir. Mar. 24, 2015). We now must decide Mr. Washington's appeal. In this appeal, Mr. Washington argues in part that the evidence was insufficient to link him to the drugs. We agree and reverse and remand with instructions to dismiss the indictment.[1]

---

[1]  Mr. Washington also raises issues involving evidentiary rulings, prosecutorial misconduct, and jury instructions. We need not address these issues in light of our conclusion that the evidence is insufficient for guilt. Because the evidence of guilt was insufficient, retrial would be barred by the Double Jeopardy Clause. *United States v. Jones*, 44 F.3d 860, 870 (10th Cir. 1995). Thus, on remand, the district court would have no need to address the issues involving evidentiary rulings, prosecutorial misconduct, or jury instructions.

## I.    Our Standard of Review

Our review is de novo. *United States v. Prince*, 647 F.3d 1257, 1268 (10th Cir. 2011). In conducting this review, we draw all reasonable inferences in favor of the government. *Id.* We then must decide if these inferences could lead a rational jury to find guilt beyond a reasonable doubt. *Id.*

## II.    The Drugs

The trunk of the car contained a black duffel bag, which held fourteen bricks of marijuana and a receipt issued to Mr. Edwards. Drugs were also stored in three closed containers found in the car: a red "Cold-Eeze" box, a black zipper bag, and a "Green Tea Extract" bottle.

## III.    Culpability of Mr. Washington

From the large quantity of marijuana and methamphetamine in the car, the jury could have inferred that one of the two men was going to McAlester to sell drugs. We have elsewhere held that the jury could have easily tied Mr. Edwards to the drugs. *United States v. Edwards*, __ F.3d __, No. 14-7028, 2015 WL 1296624, at *5 (10th Cir. Mar. 24, 2015). After all, he had fourteen bricks of marijuana in his duffel bag. But, Mr. Edwards's culpability might not translate to Mr. Washington's. In this appeal, we must decide whether the government sufficiently tied Mr. Washington to the drugs.

## A.    The Government's Burden of Proof

We view the strength of that tie based on the charge: possession with intent to distribute and aiding and abetting that offense. For this charge, the government had to prove that Mr. Washington knew there were drugs in the car. If he knew about the drugs and had access to them, he could have been guilty of possession with intent to distribute. *See United States v. Norman*, 388 F.3d 1337, 1341 (10th Cir. 2004). Or, if Mr. Washington drove Mr. Edwards to McAlester, knowing Mr. Edwards was going to sell the drugs, Mr. Washington might have been guilty of aiding and abetting the possession with intent to distribute. *See United States v. Jones*, 44 F.3d 860, 869-70 (10th Cir. 1995). Under either theory, however, the government had to prove that Mr. Washington had known about the drugs.

To establish Mr. Washington's knowledge, the government had to present evidence of a nexus between Mr. Washington and the drugs in the car. *See United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998) ("To prove constructive possession when there is joint occupancy of a vehicle, the government must present direct or circumstantial evidence to show some connection or nexus individually linking the defendant to the contraband."). His presence in the car was not enough. *See United States v. Castorena-Jaime*, 285 F.3d 916, 933 (10th Cir. 2002).

4

**B.    The Government's Evidence**

The government admits that "[Mr.] Washington had no drugs on his person at the time of arrest, his personal property did not contain drugs and no fingerprint evidence was located nor any confession obtained." Appellee's Resp. Br. at 49. Nonetheless, the government argues that the evidence supports the finding of guilt because

- drugs and scales were in the rental car,

- the car smelled of marijuana and aluminum foil was present near Mr. Washington's notebook (trial arguments), and

- Mr. Washington packed the car with Mr. Edwards, knew that Mr. Edwards lied to his mother, and knew that Mr. Edwards was bringing numerous heavy bags for a short trip (appellate arguments).

We reject each argument.

**1.    The Drugs and Scales in the Car**

The car was not Mr. Washington's; it was a rental that Mr. Edwards borrowed from his mother. Though Mr. Edwards had fourteen bricks of marijuana in his duffel bag, there were no drugs (or anything else incriminating) in Mr. Washington's duffel bag.

There were drugs in a "Green Tea Extract" bottle, a red "Cold-Eeze" box, and a black zipper bag. But, there was no evidence that Mr. Washington could have seen inside these containers. *See* p. 11, below.

There were also two scales in the car, and the government presented evidence that drug dealers often use scales to weigh their drugs. Record on

5

Appeal, vol. 2 (Trial Transcript), pt. 1, at 178, 193. But, these scales were not easily visible. One was in a black box, and the other was designed to look like an ordinary iPhone. There was no evidence that either scale was Mr. Washington's or that he even knew there was a scale in the car.

### 2. The Prosecutor's Arguments at Trial

In closing argument, the prosecutor referred to two pieces of evidence: the smell of marijuana in the car and the presence of aluminum foil near Mr. Washington's notebook. Both pieces of evidence suggest consumption, not distribution.

If the car smelled like marijuana, perhaps Mr. Washington might have smoked marijuana during the trip. And, if he did smoke marijuana in the car, he might have suspected or even known that there was more marijuana stashed in the car.

The problem is there was no evidence that Mr. Washington could have known there was enough marijuana for someone to sell. Though the government presented evidence of a marijuana odor, no one testified whether the odor had involved burnt marijuana or raw marijuana. *See* Oral Arg. at 34:19-34:30 (government counsel's admission that she had been unable to find evidence stating whether the smell involved burnt marijuana). Apparently, there was enough marijuana for someone to smoke during the car trip. But, there was no evidence indicating that the smell would have alerted a passenger to the presence of a distributable quantity

6

of drugs. *See id.* at 34:30-34:49 (government counsel's admission that the smell of burnt marijuana "may not" speak to whether Mr. Washington could have known there were bricks of marijuana in the car); *see also United States v. Sanchez-Mata*, 925 F.2d 1166, 1168 (9th Cir. 1991).[2]

The prosecutor also referred to the presence of aluminum foil in Mr. Washington's duffel bag. But, the evidence regarding aluminum foil involved only drug consumption, not distribution.[3] Mr. Washington was not convicted of merely consuming or possessing drugs; he was convicted of

---

[2]    There the defendant was riding in a car. *Sanchez-Mata*, 925 F.2d at 1167. An agent smelled marijuana from outside the car and found duffel bags containing 141 pounds of marijuana. *Id.* The defendant was convicted of conspiracy to possess marijuana with intent to distribute. *Id.* The Ninth Circuit Court of Appeals reversed based on insufficiency of the evidence. *Id.* at 1168. At trial, the prosecution presented evidence that the defendant had known "what marijuana smelled like and must have recognized the strong odor present." *Id.* But, knowledge of the smell did not suffice, for "knowledge that drugs [had been] present [was] not enough to prove involvement in a drug conspiracy." *Id.*

[3]    Officer DeLana was asked if he knew of any possibility that the aluminum foil would be used for "drug activity." Record on Appeal, vol. 2 (Trial Transcript), pt. 2 at 278. Officer DeLana answered: "It could be used to smoke methamphetamine." *Id.* He repeated this explanation:

> Q.    Okay. Is it safe to say aluminum foil is consistent with narcotics use?
>
> A.    Yes.
>
> Q.    And you said it was to used [sic] to smoke methamphetamine?
>
> A.    Yes.

*Id.* at 279.

7

possessing drugs with the intent to distribute them or aiding and abetting that offense. And, there was no evidence for a jury to infer an intent to distribute from the presence of aluminum foil.

Finally, the prosecutor argued that when Ms. Bethany Kendall and Mr. Washington had seen the police near the car, everybody had become nervous, Mr. Washington had hidden his phone in her room, and no one had asked the police why they were hovering near the car. Record on Appeal, vol. 2 (Trial Transcript), pt. 2, at 373-74. This argument is based on a mistake about Ms. Kendall's testimony.

The actual testimony was that Ms. Kendall and Mr. Washington had seen "a bunch of cop cars." *Id.* at 287. Ms. Kendall did *not* testify that the police were near the rental car[4] or that Mr. Washington had hidden his phone in her apartment.[5]

Ms. Kendall added that there was a set of car keys in her daughter's shoes. *Id.* at 290. From this fact, Ms. Kendall "guess[ed]" that one of the two men had hidden his keys in the shoe. *Id.* We have no evidence about which man hid the keys or why this act would suggest Mr. Washington's knowledge about the quantity of drugs in the car.

---

[4]     Record on Appeal, vol. 2 (Trial Transcript), pt. 2, at 292-93.

[5]     She did testify that two cellphones had been left out in the open in her apartment. Record on Appeal, vol. 2 (Trial Transcript), pt. 2, at 289. But, the police took Mr. Washington from the apartment. *Id.* at 288-90. There is nothing to suggest that he intentionally left his cellphone behind.

8

### 3.    The Government's Appellate Arguments

The government adds that the jury could have inferred Mr. Washington's knowledge from

- his presence when Mr. Edwards lied to his mother about why they needed to borrow the car,

- the oddity of bringing so many heavy bags for an overnight trip to McAlester, and

- indications that the two men were together when the car was packed.

Appellee's Resp. Br. at 50 (arguing that Mr. Washington "stood by while Edwards lied to his mother about going to Arkansas"); Oral Arg. at 38:00-38:26 (arguing that the heavy luggage was too extensive for an overnight trip by two friends); Appellee's Resp. Br. at 48 (arguing that the two men must have been together when "the bags and drugs and packaging materials" were loaded into the car). The first two arguments are based on mistaken interpretations of the trial testimony, and the third is insufficient to infer knowledge.

The first argument is based on the testimony of Mr. Edwards's mother. She testified briefly about why she had loaned the car to Mr. Edwards:

Q.    . . . Who actually asked you to borrow the vehicle?

A.    Maurice [Edwards] asked me to borrow the vehicle for Tony [Washington] to be able to go see his newborn baby.

9

Q. Okay. And do you remember where that newborn baby was located?

A. To my knowledge, Arkansas.

Record on Appeal, vol. 2 (Trial Transcript), pt. 2, at 299. But, she added that this discussion had taken place over the phone. *Id.* at 300. There was *no* evidence that Mr. Washington was on the telephone call or otherwise present with Mr. Edwards when he asked to borrow the car. Indeed, when the mother was asked if she had any discussion with Mr. Washington about using the car, she said that the only conversation took place the next day when she "told him to be safe and all that good stuff." *Id.* at 302-03.

The government's second argument is also based on mistakes about the testimony. At oral argument, the government argued for the first time that Mr. Washington could have been suspicious because of the quantity of heavy luggage that Mr. Edwards was taking for a short trip to McAlester.[6] But there was no testimony about how long the two men were planning to stay in McAlester.

---

[6] The government stated at oral argument:

> I think what you can look at is the fact that we have two guys that are supposed to be going on a short trip for the weekend. You know, a night, two nights. Their jeans are not even packed in the bags. And . . . and it just seems like, I was sitting here this morning, it just seems like a lot of bags for guys to go just on an overnight trip. It certainly seems like a lot of heavy bags . . . .

Oral Arg. at 37:59-38:26.

10

Finally, the government argues that the two men must have been together when they put their belongings in the car. Appellee's Resp. Br. at 48. But, even if Mr. Washington was present, what would he have seen? A black zipper bag, a red "Cold-Eeze" box, a "Green Tea Extract" bottle, and a black duffel bag? There is no evidence suggesting that Mr. Washington knew what was inside these four items.



11

According to the government, Mr. Washington would have seen a false-bottomed container, labelled "Puncture Seal,"[7] in the back seat. *Id*. But there were no drugs in this container. Record on Appeal, vol. 2 (Trial Transcript), pt. 1 at 196, 241.

## IV. Conclusion

The jury could attribute guilt to Mr. Washington based solely on his presence in the car and speculation about his knowledge of Mr. Edwards's plans.[8] But the presence of Mr. Washington and speculation about his knowledge, even in combination, would not constitute sufficient evidence for the jury to find guilt beyond a reasonable doubt. *See* p. 4, above. Thus, we reverse the conviction and remand with instructions to dismiss the indictment.

---

[7]     The container's bottom consisted of a metal ring that had been unscrewed. Record on Appeal, vol. 2 (Trial Transcript), pt. 1, at 195-96.

[8]     The government also presented evidence that an unidentified woman had called "911," stating she saw Mr. Edwards and Mr. Washington leaving for McAlester with marijuana and methamphetamine. But, the government admits that this evidence was not admissible to prove the truth of what the caller had said. Appellee's Resp. Br. at 29.