**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ANTONIO GUTIERREZ,

    Defendant - Appellant.

No. 14-2129
(D.C. No. 1:12-CR-02222-WJ-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **HOLMES**, and **McHUGH**, Circuit Judges.
_____

Defendant-Appellant Antonio Gutierrez was convicted by a jury of three

counts of producing child pornography, pursuant to 18 U.S.C. §§ 2251(a) and 2256,

and sentenced to 360 months in prison. He appeals his convictions and sentence,

arguing: (1) the prosecution failed to give him adequate notice of the charges against

him, (2) the district court improperly admitted expert testimony and committed other

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

evidentiary errors, and (3) the district court committed procedural error in imposing his sentence. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I.

We provide only a brief overview of the facts to frame the issues presented for our review. Mr. Gutierrez was charged with taking sexually explicit photographs of his daughter, D.G., who was sixteen years old at the time. The photographs were found on Mr. Gutierrez's laptop computer, his digital camera, and his cell phone. He was charged with three counts based on images admitted at trial as Exhibits 29, 30, and 31. Other sexually explicit photographs were also admitted at trial, although they were not the subjects of criminal charges. Government expert witnesses testified that they had examined the "metadata" or "EXIF" data, which is information about a picture that is embedded in the picture such as the date and time the photo was taken, from Mr. Gutierrez's electronic devices to determine the dates and times the photographs were taken.

The government argued that Mr. Gutierrez asked D.G. to allow him to take pornographic photos of her in exchange for paying her cell phone bill. For his part, Mr. Gutierrez asserted that D.G. made up the charges so she could get away from his control and strict rules.

The jury convicted Mr. Gutierrez on all counts. The district court then sentenced him to a below-guidelines sentence of 360 months in prison. He appeals his convictions and sentence.

II.

Mr. Gutierrez contends that the superseding indictment was not specific enough to allow him to prepare a defense, in violation of the Sixth Amendment. *See Johnson v. Gibson*, 169 F.3d 1239, 1252 (10th Cir. 1999) ("A charging instrument may violate the Sixth Amendment by failing to provide a defendant with adequate notice of the nature and cause of the accusations filed against him."). "We review the sufficiency of an indictment de novo. An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Edwards*, 782 F.3d 554, 562 (10th Cir.) (citations and internal quotation marks omitted), *petition for cert. filed* (U.S. June 22, 2015) (No. 14-10403). Mr. Gutierrez challenges the second factor, arguing that the superseding indictment did not provide the precise dates and times he allegedly took the photographs. Rather, the superseding indictment charged him with taking the photographs "[o]n or about between August 1, 2011 and November 7, 2011." R. Doc. 25.

The indictment also alleged that the prohibited conduct occurred in Bernalillo County, New Mexico, and identified the photograph that formed the basis of each count by ".jpeg" number. Further, the indictment described the prohibited behavior and alleged that in producing each photograph, Mr. Gutierrez used materials that had been transported in interstate and foreign commerce.

3

We conclude that the superseding "indictment was sufficiently complete and precise to enable [Mr. Gutierrez] to prepare a defense and avoid prejudicial surprise at trial and to bar the risk of double jeopardy." *United States v. Barbieri*, 614 F.2d 715, 719 (10th Cir. 1980) (reviewing denial of a motion for a bill of particulars seeking, among other things, "[t]he specific event, facts, conduct, or circumstances upon which the allegations in the indictment are based"); *see also United States v. Edmonson*, 962 F.2d 1535, 1541 (10th Cir. 1992) (rejecting claim that "the indictment's allegation of "from before on or about April 6, 1989 to on or about July 5, 1989" was "fatally defective in that it failed to allege any reasonably ascertainable time period within which the conspiracy occurred"). Therefore, we hold that the superseding indictment "conforms to minimal constitutional standards," *Edwards*, 782 F.3d at 562.

Mr. Gutierrez makes a related argument that the government did not timely provide him with the date-and-time-related content of the metadata. He contends that he requested this information, but it was not revealed until the eve of trial. But it was incumbent on Mr. Gutierrez to take affirmative steps to gather further information if he needed it to prepare his defense. *See, e.g.*, *Sullivan v. United States*, 411 F.2d 556, 558 (10th Cir. 1969) ("If the accused desired more definite information for the proper preparation of a defense and to avoid prejudicial surprise, the remedy was by motion for a bill of particulars . . . ."); *see also United States v. Doe*, 572 F.3d 1162, 1176 (10th Cir. 2009) ("The proper method to challenge and prevent the prosecution

from changing its theory of the case is through a bill of particulars."). Mr. Gutierrez did not file a motion for a bill of particulars.

Furthermore, it is undisputed that the defense had access to the metadata from the beginning of the prosecution, albeit only at the FBI office. *See* 18 U.S.C. § 3509(m)(1) (requiring child pornography to remain in the government's custody). Notwithstanding this access, Mr. Gutierrez argues that the FBI refused to provide any analysis of the metadata. But he has cited no authority requiring the government to interpret the metadata for him. Instead, § 3509(m)(2) provides only that the subject material be made reasonably available to the defendant, his attorney, and any expert witness, not for the government to interpret it for him. Therefore, we reject his claim that the government hindered his ability to prepare a defense.

### III.

Mr. Gutierrez next asserts that the district court erred in allowing two government witnesses to testify as experts. He filed a pre-trial motion in limine to exclude their testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The district court did not hold an evidentiary hearing and denied the motion without prejudice to a future *Daubert* motion. Mr. Gutierrez did not file another motion. At trial, Michael Fisher, an electronics engineer and forensic examiner for the FBI, was accepted without objection as an expert in cell phone forensics. Similarly, Philip Michael Smith, a New Mexico State Police agent, was accepted without objection as an expert in computer forensics. Mr. Gutierrez contends that the district court erred in denying his *Daubert* motion without holding

5

an evidentiary hearing. He further contends that the district court committed plain error in admitting the experts' testimony.

The district court has a gatekeeper obligation, imposed by Fed. R. Evid. 702, to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. "[W]e review de novo the question of whether the district court applied the proper standard [for admitting an expert's testimony] and actually performed its gatekeeper role in the first instance." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003). We first note that the district court was not required to hold an evidentiary hearing in order to fulfill its gatekeeper function. *See United States v. Nacchio*, 555 F.3d 1234, 1253-54 (10th Cir. 2009) (en banc). "We review for abuse of discretion both the denial of a *Daubert* hearing and the district court's decision whether to admit or exclude expert testimony." *United States v. Turner*, 285 F.3d 909, 912 (10th Cir. 2002) (citation omitted). We will find an abuse of discretion if the district court "clearly erred or ventured beyond the limits of permissible choice under the circumstances." *Id.* (internal quotation marks omitted).

Mr. Gutierrez claims that the district court erred in not holding an evidentiary hearing on the issues of the experts' qualifications and their failure to furnish a report identifying the photographs they relied on. In his motion, Mr. Gutierrez argued that neither expert had established that he had qualified as an expert in a sufficient number of other cases. The district court observed that the number of times an expert had testified in other cases was not relevant to his or her qualifications to give expert

6

testimony. Based on its review of the experts' resumes and credentials, the court preliminarily found that they were qualified to give expert opinions and denied the motion without prejudice.

As for Mr. Gutierrez's argument that the experts had not identified the underlying data they relied on, at the motions hearing the district court noted that the government had provided the experts' reports to the defense. The court found that the defense motion did not make any objections to the reports' reliability. In addition, it was undisputed that the defense had access to the metadata from the electronic devices for an independent examination. Based on our de novo review, we conclude that the district court performed its gatekeeping function and did not abuse its discretion in ruling without holding an evidentiary hearing.

We turn to Mr. Gutierrez's argument that allowing the experts to testify was plain error. As noted, defense counsel neither renewed the *Daubert* motion nor objected at trial to allowing the witnesses to testify as experts. "We will find plain error where there is (1) error, (2) that is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Sparks*, 791 F.3d 1188, 1193 (10th Cir. 2015) (internal quotation marks omitted).

Mr. Gutierrez asserts that the experts failed to explain why the photographs marked Exhibits 55/55a and 56/56a were reliable, despite their apparent corruption, as demonstrated by their identical digitized date and time of January 1, 2007, at 12:00:00. Mr. Gutierrez has not cited to the part of the record on which he relies

7

for this claim, *see* Fed. R. App. P. 28(a)(8)(A) (requiring citation to the "parts of the record on which the appellant relies"), and our review of Agent Smith's testimony revealed no discussion of Exhibit 56/56a.  Nevertheless, Agent Smith testified that 24 images, including Exhibits 55/55a, showed that they were all digitized on the computer on January 1, 2007, at 12:00:00, but all 24 images could not have been taken at the same moment.  He had not been able to examine the camera that took the photos so he could not opine on the date the images were digitized, conceding that the date(s) the 24 images were digitized were unreliable.  *See* DNM at 667.[1]

Similarly, Mr. Gutierrez points to 19 photographs of D.G., Exhibits 97 through 115, showing a download or modified date of April 5, 2000, when D.G. would have been a small child.  But as Agent Smith explained, the download/modification date is not necessarily the date the photo was taken.  *See id.* at 649-54.[2]  Mr. Gutierrez makes no claim that the images were not of D.G. as a teenager.  Moreover, none of the challenged images are among the images that formed the basis of the charged offenses, Exhibits 29, 30, and 31.  For these reasons, admitting this evidence was not plain error.

[1] The trial transcript is consecutively paginated using a "DNM" label.  We refer to the transcripts using this designation.

[2] Mr. Gutierrez argues that Agent Smith's testimony that the date an image was created on a cell phone could be manipulated conflicted with Mr. Fisher's opinion that it was not possible to manipulate the EXIF data on a cell phone.  But Agent Smith made clear that such manipulation would be very difficult, requiring that connectivity be turned off, which would cause the cell phone not to work.  *See* DNM at 678.  Agent Smith testified that when the photos were taken, the cell phone was active.  Any minor conflict was immaterial.

8

Mr. Gutierrez's remaining argument does cover the charged images, however. He contends that Agent Smith's opinion on the dates the incriminating photographs were taken was not scientific or reliable. He objects to the statement that all of the dates and times "gave a good consensus." *Id.* at 669. He argues that because some of the images appeared to have been made in 2000 and 2007—dates that could not have been correct given D.G.'s age on those dates—and thus appeared to be corrupted, Agent Smith "simply pick[ed] out the dates and times remaining that appear[ed] most often among the data, and declare[d] those dates and times to be accurate as the 'consensus.'" Aplt. Opening Br. at 42. He says Agent Smith perceived a correlation between some of the images and then improperly assumed there was a connection. But Agent Smith testified that (1) he had analyzed the computers, Mr. Gutierrez's and D.G.'s cell phones, and the cameras using "multiple forensic programs to determine the correct date and time," DNM at 669; (2) he had compared the times on Mr. Gutierrez's computer, the cell phones, and the internet activity, which were all consistent; and (3) based on that information, he could conclude that the dates and times the government alleged the photos were taken were accurate. In light of this record, we reject Mr. Gutierrez's characterization of Agent Smith's opinion as merely guessing. We conclude that Mr. Gutierrez has not shown that the district court erred in allowing the expert testimony, let alone that it affected his substantial rights. Therefore, reversal is not warranted under plain error review.

9

IV.

Mr. Gutierrez argues that the district court's ruling to exclude evidence of D.G.'s sexual activity immediately following his arrest violated the Sixth Amendment's Confrontation Clause. The district court granted in part and denied in part the government's pretrial motion in limine to exclude evidence of D.G.'s sexual behavior. The court ruled that the behavior occurring before D.G. reported her father's crimes on November 7, 2011, was relevant to Mr. Gutierrez's theory that D.G. wanted to escape his close supervision. As to D.G.'s sexual behavior, pregnancy, marriage, and birth of her son, which occurred after November 7, the court ruled that this evidence was not relevant.

We first consider whether the court's evidentiary ruling implicated the Confrontation Clause. "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination," but "not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Consistent with the Confrontation Clause, trial judges may "impose reasonable limits on cross-examination based on concerns about prejudice, confusion of the issues, or interrogation that is repetitive or only marginally relevant." *United States v. DeChristopher*, 695 F.3d 1082, 1096 (10th Cir. 2012) (ellipses and internal quotation marks omitted). Thus, "we will reverse a district court's decision excluding evidence if, but only if, the proffered evidence is both relevant and material." *Id.* (brackets and internal quotation marks omitted).

10

We conclude that D.G.'s sexual behavior following her report to the authorities was not relevant to Mr. Gutierrez's defense that she fabricated the allegations in order to get away from his control. After she reported the crimes to the police, D.G. went to live in a youth shelter where, under the defense theory, she had no further motive to implicate her father. Mr. Gutierrez also claimed that D.G. ran away from the shelter, which had strict rules, so she could be with her boyfriend. Therefore, Mr. Gutierrez argues that this evidence was relevant to contradict the government's "presentation of DG as an innocent child with no incentive to lie and no ability to fabricate pornographic photographs." Aplt. Opening Br. at 51. But he has not explained how D.G.'s sexual behavior after she went to the shelter was relevant to her incentive to lie about the photographs taken before she left home or her ability to fabricate pornographic photographs. Moreover, D.G. testified that she lived at the youth shelter for seven months, DNM at 362, which detracts from the defense theory that she implicated her father to escape his control, only to find herself in a more restrictive situation from which she soon fled. We affirm the district court's ruling excluding this evidence as not relevant.

Mr. Gutierrez also contends that the district court improperly prevented him from cross-examining D.G.'s brother Dustin. Dustin testified that shortly before D.G.'s allegations, he had accused Mr. Gutierrez of abusing him. Although Mr. Gutierrez has again not cited to the record, we assume he refers to the following exchange:

11

Q (by defense counsel): Do you remember the – the CYFD [Children, Youth and Families Department] lady saying that she was not going to change custody [of D.G.] even after what you had told them?

[Prosecutor]: Objection; hearsay.

DNM at 963. A bench conference was held, after which the court sustained the hearsay objection.

Mr. Gutierrez argues that the answer to the question would not have been hearsay because it would have shown that after CYFD told Dustin it would not change custody of D.G., Dustin had a motive to frame Mr. Gutierrez, with D.G.'s help, to corroborate his charge that Mr. Gutierrez had abused him. We agree that the proffered testimony clearly was intended to show the truth of the matter asserted— the substance of what the CYFD lady told Dustin—and was inadmissible hearsay, *see* Fed. R. Evid. 801(c)(2) (defining "hearsay" as a statement "offer[ed] in evidence to prove the truth of the matter asserted"). Accordingly, the district court did not abuse its discretion in sustaining the government's hearsay objection. *See United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1132 (10th Cir.) (reviewing evidentiary rulings for abuse of discretion), *cert. denied*, 135 S. Ct. 768 (2014).

V.

Mr. Gutierrez also challenges the government's evidence to establish the element of conviction of use of materials that were "mailed, shipped, or transported in or affecting interstate or foreign commerce." 18 U.S.C. § 2251(a). Agent Victoria Vaughan testified that the two cell phones and the digital camera were stamped "made in China." DNM at 739-41. She further testified that those devices would

12

have had to cross state and country lines to be present in New Mexico as of the date

D.G. reported Mr. Gutierrez's crimes.

Mr. Gutierrez filed a pretrial motion in limine seeking to exclude the "made in China" evidence. The district court denied the motion unequivocally. Although a pretrial motion in limine to exclude evidence does not necessarily preserve a claim of error for appeal, such a motion "may preserve an objection when the issue (1) is fairly presented to the district court, (2) is the type of issue that can be finally decided in a pretrial hearing, and (3) is ruled upon without equivocation by the trial judge." *United States v. Mejia-Alarcon*, 995 F.2d 982, 986 (10th Cir. 1993); *United States v. Harrison*, 296 F.3d 994, 1002 (10th Cir. 2002) (same); *see also* Fed. R. Evid. 103(b) ("Once the court rules definitively on the record—either before or at trial—a party need not renew an objection . . . to preserve a claim of error for appeal."). Mr. Gutierrez's motion in limine met these criteria, so he preserved the issue for appeal. We review his challenge for an abuse of discretion. *Harrison*, 296 F.3d at 1002.

Mr. Gutierrez argues, however, that a de novo standard of review is required because Agent Vaughan's testimony contravened the Confrontation Clause. *See Gutierrez de Lopez*, 761 F.3d at 1132 ("We review a claim of error involving the Confrontation Clause de novo."). The relevant inquiry is whether the statements of a witness "absent from trial" are testimonial. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). We conclude that the manufacturing labels' statement that the devices were made in China was not testimonial, i.e., made by the manufacturer with "the primary

13

purpose . . . to establish or prove past events potentially relevant to later criminal prosecution," *Davis v. Washington*, 547 U.S. 813, 822 (2006). Thus, we reject Mr. Gutierrez's argument that the trade inscriptions were testimonial and conclude that the Confrontation Clause was not implicated.

Mr. Gutierrez also argues that the "made in China" label was unreliable hearsay. But this circuit has held that a manufacturer's marking is not hearsay. *United States v. Thody*, 978 F.2d 625, 630-31 (10th Cir. 1992) (holding manufacturer's "Made in Spain" stamp on gun butt was not hearsay); *see also United States v. Buchanan*, 604 F.3d 517, 522 (8th Cir. 2010) (holding manufacturer's markings on a safe and a key were not hearsay). Consequently, the district court did not abuse its discretion in admitting the evidence.

## VI.

Finally, defense counsel makes a cursory sentencing challenge, invoking *Anders v. California*, 386 U.S. 738, 744 (1967) (authorizing defense counsel to seek permission to withdraw from representing a client in a direct criminal appeal when counsel has conscientiously examined the case and determined any appeal would be wholly frivolous). Counsel contends that the district court may have committed procedural error based on Agent Vaughan's testimony at sentencing that some of the pornographic images, other than the charged images, may have been accessed by someone. He contends that this testimony conflicted with the experts' trial testimony that only one photograph was ever accessed. Counsel concedes that the record does

14

not show that the district court considered Agent Vaughan's testimony in setting the sentence.

Mr. Gutierrez did not preserve any procedural challenge in the district court, so "we review only for plain error," *United States v. Lucero*, 747 F.3d 1242, 1246 (10th Cir. 2014). Accordingly, "we will only vacate the sentence if: (1) there is error; (2) that is plain; (3) that affects substantial rights, or in other words, affects the outcome of the proceeding; and (4) substantially affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

Mr. Gutierrez has not identified any error, let alone plain error, in the district court's imposition of his sentence. In pronouncing the below-guidelines sentence, the district court gave no indication that it had relied on the testimony about the images that had been accessed.[3] Therefore, we affirm Mr. Gutierrez's sentence.

VII.

For the reasons stated, we affirm Mr. Gutierrez's convictions and sentence.

Entered for the Court

Jerome A. Holmes
Circuit Judge

---

[3] The district court noted that the guidelines sentence was life in prison.