FILED
United States Court of Appeals
Tenth Circuit

November 9, 2015

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

JESUS IBARRA-DIAZ,

     Defendant-Appellant.

No. 13-3130

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 6:13-CR-10011-MLB-1)**

---

Rick E. Bailey of Conlee, Schmidt & Emerson, LLP, Wichita, Kansas (Laura B. Shaneyfelt of Ney, Adams & Shaneyfelt, Wichita, Kansas, on the brief) for Defendant-Appellant Jesus Ibarra-Diaz.

Alan G. Metzger, Assistant United States Attorney, Wichita, Kansas (Barry R. Grissom, United States Attorney, and James A. Brown, Assistant United States Attorney, Topeka, Kansas, on the brief) for Plaintiff-Appellee.

---

Before **HARTZ**, **O'BRIEN**, and **HOLMES**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

---

Jesus Ibarra-Diaz appeals from his conviction for possession with intent to distribute fifty grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii), and

18 U.S.C. § 2. Mr. Ibarra-Diaz asserts four claims of error on appeal: (1) the district court violated his Sixth Amendment confrontation rights by admitting various statements of testimonial hearsay at trial; (2) he was unfairly prejudiced by the admission of inflammatory testimony from the government's key witness; (3) he was deprived of a unanimous jury verdict by an allegedly duplicitous indictment; and (4) there was insufficient evidence produced at trial to support his conviction. Exercising jurisdiction under 28 U.S.C. § 1291, we reject these challenges and **affirm** Mr. Ibarra-Diaz's conviction.

## I

In January 2013, an undercover detective with the Wichita Police Department was investigating drug-trafficking activity with the help of a confidential informant ("CI"). The CI called the detective and identified Mr. Ibarra-Diaz as a potential target for the investigation. The CI told the detective that Mr. Ibarra-Diaz had several pounds of methamphetamine for sale; he provided Mr. Ibarra-Diaz with the detective's phone number. Working through the CI, the detective arranged to buy one pound of methamphetamine for $18,000.

On January 8, 2013, the undercover detective received a phone call from Mr. Ibarra-Diaz's girlfriend and co-defendant, Ana Valeriano-Trejo. She began the conversation with a question: "Meet up with us somewhere?" R., Vol. 4, at 1 (Tr. of Gov't Ex. 35, dated Jan. 8, 2013). The undercover detective suggested that they meet at the Towne West shopping mall. Ms. Valeriano-Trejo agreed,

2

and asked the detective, "Ok, yeah, he thinks you want to talk to him first or you want just get ready, get him, get him be ready?" *Id.* The detective replied, "Yeah, I want him to be ready." *Id.* They agreed to meet at a specified location at the Towne West shopping mall in approximately thirty minutes. Ms. Valeriano-Trejo told the detective that she would be coming along, and indicated that they would be driving a gold Malibu. The detective testified that during the conversation he could hear a male voice in the background saying, "see if he wants to talk first." R., Vol. 3, at 39 (Trial Tr., dated May 7–9, 2013).

After the phone call, the detective held a debriefing session with other officers to prepare for the planned drug purchase. The team planned to conduct a "buy/bust" operation, meaning in this instance that officers would move in and arrest the suspect as soon as the detective saw the drugs and gave a signal. The detective assigned a surveillance position to each member of the team. Then, wearing a body wire, he drove to the Towne West shopping mall and parked at the agreed-upon spot.

After approximately forty-five minutes, a blue Chevrolet Malibu arrived and parked, facing in the opposite direction, next to the detective's vehicle. Mr. Ibarra-Diaz was driving, and was accompanied by Ms. Valeriano-Trejo and an eight-month-old baby. The detective got out of his vehicle and into the back seat of the Malibu. Ms. Valeriano-Trejo engaged in small talk with the detective, and asked Mr. Ibarra-Diaz, "Where is Ricardo[?]" R., Vol. 4, at 8 (Tr. of Gov't Ex.

3

36).[1]  Mr. Ibarra-Diaz told her, "In a little bit he will bring it," and instructed her to "call him to come over here."  *Id.*  Ms. Valeriano-Trejo explained to the detective that "Ricardo" was "just our friend."  *Id.*

Almost immediately thereafter, a brown Ford Explorer SUV arrived and parked on the opposite side of the detective's vehicle.  The driver of the Explorer, Ricardo Estrada, got out of his vehicle and spoke with Mr. Ibarra-Diaz through the open driver's-side window of the Malibu.  The detective was unable to fully hear Mr. Estrada's side of the conversation, but the body wire recorded Mr. Ibarra-Diaz telling Mr. Estrada, "Hey man, get it out and bring it in . . . get it and bring it in."  *Id.* at 9.  The detective testified that Mr. Estrada continued to talk to Mr. Ibarra-Diaz while looking at the detective "real hard."  R., Vol. 3, at 53.  According to the detective, at that point he heard Mr. Estrada tell Mr. Ibarra-Diaz that the detective was a police officer.  Although the detective did not immediately recognize Mr. Estrada, he later recalled that five weeks earlier he had interviewed Mr. Estrada as a potential CI.

Mr. Ibarra-Diaz told the detective, "Go up to the car."  R., Vol. 4, at 9.  The detective got out of the Malibu and confronted Mr. Estrada, saying, "You think I am a cop."  *Id.*  At that point, Mr. Ibarra-Diaz drove away, telling Mr. Estrada, "I am going over there."  *Id.* at 10.  Officers intercepted the Malibu, and took Mr.

---

[1]     Capitalization of the text in the exhibit transcripts is altered throughout.

Ibarra-Diaz and Ms. Valeriano-Trejo into custody. The detective arrested Mr. Estrada and another officer searched the Explorer. Over the vehicle's right wheel well was a plastic Walmart bag containing suspected methamphetamine.

Once inside a patrol vehicle, Mr. Estrada voluntarily informed the detective that over a pound of methamphetamine could be found at the residence that he shared with Mr. Ibarra-Diaz and Ms. Valeriano-Trejo. Officers obtained a warrant to search the residence. They uncovered a number of pertinent items, including methamphetamine. Specifically, officers recovered documents with Mr. Ibarra-Diaz's name and picture on them. In one of the bedrooms, they found men's clothing, women's clothing, and a diaper bag containing a plastic watch box with $1440 inside. The bedroom believed to be Mr. Estrada's contained a methamphetamine pipe. In the kitchen area, Officers found Saran Wrap, which they surmised was used to package drugs. Notably, the officers also found a five-gallon tub of tile adhesive in a utility area connected to the kitchen. Inside the tub, they discovered another plastic Walmart bag—like the one previously discovered in the vehicle's wheel well—that contained roughly one pound of suspected methamphetamine.

A forensic chemist analyzed samples taken from the two plastic Walmart bags and confirmed that both held substances containing methamphetamine. Laboratory tests revealed that the bag taken from the Explorer contained 447.8 grams of a substance that was 72% pure methamphetamine (i.e., 322.41 grams of

5

actual methamphetamine) and the bag taken from the residence held 432.1 grams of a substance that was 79% pure methamphetamine (i.e., 341.35 grams of actual methamphetamine).

A federal grand jury sitting in the United States District Court for the District of Kansas returned an indictment charging Mr. Ibarra-Diaz, Ms. Valeriano-Trejo, and Mr. Estrada with one count of possession with intent to distribute fifty grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii), and 18 U.S.C. § 2. Mr. Ibarra-Diaz exercised his right to a jury trial. At the close of the government's case-in-chief, he moved for a judgment of acquittal. *See* Fed. R. Crim. P. 29(a). Citing the "overwhelming evidence" in support of the government's case, the district court denied the motion. R., Vol. 3, at 190. At that point, Mr. Ibarra-Diaz rested his case without testifying or presenting any evidence of his own. After deliberating, the jury pronounced him guilty.

A Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office found that Mr. Ibarra-Diaz was responsible for possession with intent to distribute 663.76 grams of actual methamphetamine—the sum of the amounts contained in the two Walmart bags. Under the U.S. Sentencing Guidelines Manual ("U.S.S.G."),[2] this drug quantity yielded a base offense level of thirty-six.

---

[2]     The U.S. Probation Office applied the 2012 version of the U.S.S.G. The parties do not challenge this decision on appeal.

*See* U.S.S.G. § 2D1.1(c)(2) (setting base offense level at thirty-six for at least 500 grams but less than 1.5 kilograms of actual methamphetamine). Applying a base offense level of thirty-six to a criminal history category of I, the PSR calculated an advisory Guidelines imprisonment range of 188 to 235 months, with a statutory minimum of five years. The court imposed a sentence of 188 months' imprisonment—the bottom of Mr. Ibarra-Diaz's Guidelines range—followed by four years of supervised release.

## II

Mr. Ibarra-Diaz challenges his conviction on four grounds. First, he argues that the district court erroneously admitted a number of statements in violation of his rights under the Confrontation Clause. Second, he claims that the district court allowed the detective to present irrelevant and inflammatory testimony, and he consequently was denied a fair trial. Third, he contends that certain evidence that the district court admitted into evidence rendered the indictment duplicitous and deprived him of a unanimous jury verdict. Fourth, and finally, he argues that there was insufficient evidence to support his conviction; thus, the district court's judgment is fatally infirm. We address and reject each of these arguments in turn.

As an initial matter, Mr. Ibarra-Diaz raises all but his sufficiency-of-the-evidence challenge for the first time on appeal. We generally review an asserted ground for reversal that a party fails to present in the district court under the

7

"rigorous plain-error standard." *United States v. Cooper*, 654 F.3d 1104, 1117

(10th Cir. 2011).  To obtain relief under this standard, a defendant:

> must show: (1) an error, (2) that is plain, which means clear or
> obvious under current law, and (3) that affects substantial rights.
> If he satisfies these criteria, this Court may exercise discretion to
> correct the error if it seriously affects the fairness, integrity, or
> public reputation of judicial proceedings.

*United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007) (quoting *United*

*States v. Kimler*, 335 F.3d 1132, 1141 (10th Cir. 2003)).[3]

---

[3]     Although application of plain-error review is generally appropriate in a circumstance of forfeited contentions of error, matters are somewhat more complicated in this case.  As noted, there are three unpreserved claims of error here.  As to the first two claims (i.e., Mr. Ibarra-Diaz's claims based on the admission of statements that, respectively, allegedly violated the Confrontation Clause, and were impermissibly inflammatory and prejudicial), Mr. Ibarra-Diaz does not ask for plain-error review.  Because he fails to do so, "we could permissibly decline to consider" them.  *Abernathy v. Wandes*, 713 F.3d 538, 551 (10th Cir. 2013); *see United States v. Garcia*, 793 F.3d 1194, 1214 (10th Cir. 2015) ("On appeal they do not argue that the admission of the other three statements was plain error, so we will not review them."); *United States v. Lamirand*, 669 F.3d 1091, 1099 n.7 (10th Cir. 2012) ("[Defendant] has not asked us to review his late-blooming argument for plain error.  Accordingly, we decline to do so . . . .").  Nevertheless, "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of the individual cases." *Singleton v. Wulff*, 428 U.S. 106, 121 (1976).  And, exercising our discretion, we elect to review these two claims of error, which were forfeited, under the rigorous plain-error standard of review.  As to his third unpreserved contention of error (i.e., regarding the ostensible duplicitous nature of the indictment), Mr. Ibarra-Diaz does concede a lack of preservation and urge application of plain-error review.  However, for reasons that are explicated *infra*, the failure to preserve duplicity challenges (along with others that allege defects in the indictment) are handled differently: suffice it to say for now that, ordinarily such challenges must be raised prior to trial or they are deemed waived.  *See, e.g.*, *United States v. Trammell*, 133 F.3d 1343, 1354 (10th Cir. 1998).  We conclude that Mr. Ibarra-

(continued...)

8

**A**

Mr. Ibarra-Diaz asserts that the district court violated his Sixth Amendment confrontation rights by admitting various out-of-court statements from the CI and Mr. Estrada through the testimony of the detective. The Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *see United States v. Zar*, 790 F.3d 1036, 1051 (10th Cir. 2015) ("The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant's right to confront the witnesses against her."), *petition for cert. filed* (U.S. Oct. 27, 2015) (No. 15-6650). In *Crawford v. Washington*, 541 U.S. 36 (2004), the U.S. Supreme Court "limited the Confrontation Clause's reach to testimonial statements and held that in order for testimonial evidence to be admissible, the Sixth Amendment 'demands what the common law required: unavailability and a prior opportunity for cross-examination.'" *Michigan v. Bryant*, 562 U.S. 344, 354 (2011) (quoting *Crawford*, 541 U.S. at 68).

The Supreme Court declined to precisely define the contours of what statements might be considered "testimonial." *See Crawford*, 541 U.S. at 68 ("We leave for another day any effort to spell out a comprehensive definition of 'testimonial.'"). At a minimum, the term applies to "prior testimony at a

_____

[3](...continued)
Diaz's post-trial duplicity challenge should be deemed waived.

preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* And we have previously synthesized the Court's holdings in *Crawford* and *Davis v. Washington*, 547 U.S. 813 (2006), as follows:

> [W]e might today formulate a definition of a testimonial statement which reads: a formal declaration made by the declarant that, when objectively considered, indicates the primary purpose for which the declaration was made was that of establishing or proving some fact potentially relevant to a criminal prosecution. Or, to better conform to the current state of Tenth Circuit precedent, we might say: A formal statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that the primary purpose of the statement was for use in the investigation or prosecution of a crime.

*United States v. Smalls*, 605 F.3d 765, 778 (10th Cir. 2010).

The scope of the Confrontation Clause "generally extends no further than testimonial hearsay." *United States v. Clark*, 717 F.3d 790, 815 n.15 (10th Cir. 2013) (emphasis omitted); *see United States v. Edwards*, 782 F.3d 554, 560 (10th Cir. 2015) ("The 'primary object' of the Confrontation Clause is 'testimonial hearsay.'" (quoting *Crawford*, 541 U.S. at 53)), *cert. denied*, --- U.S. ----, 2015 WL 3902785 (Oct. 5, 2015). Hearsay is defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Thus, "the Clause bars the admission of 'testimonial' hearsay unless (1) the declarant testifies at trial, or (2) the declarant is unavailable to testify and was previously subject to cross-examination concerning the

10

statement." *United States v. Faulkner*, 439 F.3d 1221, 1225 (10th Cir. 2006) (citations omitted) (citing *Crawford*, 541 U.S. at 59 & n.9).

Because the scope of the Confrontation Clause is generally limited to testimonial hearsay, the Clause "does *not* bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n.9 (emphasis added); *see Edwards*, 782 F.3d at 560 ("The Clause does not bar the use of statements (even testimonial statements) that are not hearsay, *i.e.*, that are offered for purposes other than establishing the truth of the matter asserted."). And, as we have previously explained, "[i]t is essential to understand that 'the matter asserted' is the fact being asserted by the declarant in uttering the statement," which "is not necessarily the matter that the party offering the statement into evidence is trying to prove with the statement." *United States v. Lewis*, 594 F.3d 1270, 1282 (10th Cir. 2010).

Mr. Ibarra-Diaz identifies nine statements[4] that were allegedly admitted

---

[4] Mr. Ibarra-Diaz's briefing on this issue leaves much to be desired and is far from pellucid. In his Opening Brief, Mr. Ibarra-Diaz begins with a section titled, "Facts Regarding Admission of Improper Hearsay Statements." Aplt. Opening Br. at 5–8. This section directly quotes various statements in the record, and provides a citation for each statement. Later, at the beginning of the argument section of his brief, Mr. Ibarra-Diaz provides bullet points identifying nine statements by their general description. *See id.* at 11–12. For example, "The confidential informant told [the detective] that he was very afraid of Mr. Ibarra-Diaz." *Id.* at 11. In this portion of his brief, however, Mr. Ibarra-Diaz provides no citations, but merely descriptions, which appear to generally correspond to the statements provided earlier. Finally, Mr. Ibarra-Diaz presents the meat of his legal argument—a general discussion of the law governing hearsay and the

(continued...)

11

into evidence in contravention of the Confrontation Clause.[5] Ordinarily, "whether

admission of such evidence violates the Confrontation Clause is reviewed de

novo." *Edwards*, 782 F.3d at 560 (quoting *United States v. Townley*, 472 F.3d

---

[4](...continued)
Confrontation Clause—without any specific connection or citation to any of the nine statements he has identified. *Id.* at 12–15. Thus, Mr. Ibarra-Diaz's scattershot analysis effectively leaves us—without assistance from him—to match his nine general descriptions with actual relevant statements in the record, as well as to subsequently apply the law to those statements. In reluctantly undertaking this needlessly imprecise and burdensome analysis, we will not hunt through the record for statements consistent with his nine general descriptions. Rather, we will restrict our analysis to the record passages that Mr. Ibarra-Diaz identifies at the beginning of his brief.

[5] Some of Mr. Ibarra-Diaz's arguments under the Confrontation Clause might be more properly framed as evidentiary objections under Federal Rule of Evidence 403. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ."). Although Mr. Ibarra-Diaz invokes Rule 403 in a cursory fashion to argue that the statements were prejudicial, he never develops this line of argument or applies it to any specific statements. We will not craft such arguments for him. *See United States v. Yelloweagle*, 643 F.3d 1275, 1284 (10th Cir. 2011) (noting that "[w]e cannot make arguments for" a party).

Furthermore, to the extent that Mr. Ibarra-Diaz raises hearsay issues that are independent of his Confrontation Clause challenges, we decline to address these arguments for a similar reason. In the Opening Brief, he devotes approximately three paragraphs to an argument that *some* (although he does not specify *which*) of the nine statements that he identified under his Confrontation Clause challenge were also admitted in violation of the hearsay rule, Federal Rule of Evidence 802. However, he makes no meaningful effort to tie these legal contentions to specific statements or the salient facts. We consider such skeletal arguments to be inadequate to present an issue for review. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."). Accordingly, we decline to consider any possible hearsay arguments that Mr. Ibarra-Diaz may be attempting to present independent from his Confrontation Clause challenges.

12

1267, 1271 (10th Cir. 2007)).  However, although Mr. Ibarra-Diaz raised contemporaneous objections to some of these statements on hearsay grounds, he failed to raise any objections or make any arguments regarding them under the Confrontation Clause.  "[W]here a Confrontation Clause objection is not explicitly made below we will not address the constitutional issue in the absence of a conclusion that it was plain error for the district court to fail to raise the constitutional issue *sua sponte*."  *United States v. Perez*, 989 F.2d 1574, 1582 (10th Cir. 1993) (en banc); *accord United States v. Chavez*, 229 F.3d 946, 951 (10th Cir. 2000); *United States v. Cass*, 127 F.3d 1218, 1225 (10th Cir. 1997).  In a plain-error case, under the Confrontation Clause, ultimately, "we must conclude the 'error had an unfair prejudicial impact on the jury's deliberations.'"  *Chavez*, 229 F.3d at 951 (quoting *Perez*, 989 F.2d at 1583).

We review each of these nine statements for plain error.  Ultimately, we conclude that Mr. Ibarra-Diaz cannot satisfy the plain-error test as to any of the statements.  Accordingly, we conclude that Mr. Ibarra-Diaz is not entitled to relief under the Confrontation Clause.

**1**

Mr. Ibarra-Diaz first argues that it was a violation of his confrontation rights for the jury to learn, through the detective, that the narcotics investigation regarding his conduct commenced because of information that the detective received from a CI.  When the government asked the detective how the

13

investigation into Mr. Ibarra-Diaz's conduct began, the jury heard the following

exchange:

> [THE GOVERNMENT:]  Would you please describe to the jury just how that investigation began?
>
> [THE DETECTIVE:]  I had an informant that had contacted me about an individual that I identified as Jesus Ibarra-Diaz.  This informant advised me that ––
>
> [DEFENSE COUNSEL:]  Your Honor, I'm going to object that this is hearsay.
>
> [THE GOVERNMENT:]  Your Honor, I'm just trying to establish how the investigation began and why he did what he did at a later point so I would argue that it is not hearsay.
>
> THE COURT:  I think we can move directly into what he did as a result of that contact and that will solve any problems.

R., Vol. 3, at 30–31.

This challenge fails because there was no identifiable "statement" of the

informant (the putative "declarant") admitted through the detective's testimony.

Fed. R. Evid. 801(a), (b).  Although the detective indicated that he had

information—apparently from the informant—that led him to investigate Mr.

Ibarra-Diaz, the defense's objection brought the detective's testimony abruptly to

a halt before he could offer into evidence any statement from the informant.

Absent an out-of-court statement from the informant, the detective's testimony in

this exchange communicated no hearsay.  And, if it communicated no hearsay, it

is generally of no concern to the Confrontation Clause.  *See, e.g.*, *Clark*, 717 F.3d

14

at 815 n.15; *see also Faulkner*, 439 F.3d at 1226 (noting, as to the Confrontation Clause, that "its subject is hearsay").  Accordingly, we discern no Confrontation Clause error in admitting this portion of the detective's testimony.

**2**

Mr. Ibarra-Diaz next claims that his confrontation rights were violated by the jury hearing that the CI told the detective that he was afraid of Mr. Ibarra-Diaz.  The following exchange occurred during the cross-examination of the detective:

> [DEFENSE COUNSEL:] . . . . Let me ask you this, though.  The reason that you had been involved with Ricardo Estrada five weeks earlier is because he's involved in drugs, isn't he?
>
> [THE DETECTIVE:]  That's not correct.
>
> Q  Well, usually a drug detective has contact with individuals and does interviews with people because they're involved in drugs?
>
> A  Do you want me to tell you why I had contact with Ricardo?
>
> Q  No.  I just want to know that you did have contact with him five weeks before that and you were interviewing him; correct?
>
> A  Correct.
>
> Q  And you were wanting to utilize his services; correct?
>
> A  No.  I, I provided him my phone number.  He said that he will call me.  Five weeks went by, he never called me.  He had information about dope, about drugs.  And the information was regarding your client.
>
> Q  But he never got back with you; correct?

15

A  No, he didn't.  He was very scared of your client, too.  That's why I think he didn't --

[DEFENSE COUNSEL:]  Your Honor, I'd ask that to be stricken from the record.

A  I'm sorry.

THE COURT:  Yes.  That remark will be stricken.

R., Vol. 3, at 113–14.[6]

This challenge fails for two reasons.  First, the district court's decision to strike the statement means that it was not admitted into evidence at trial at all, much less *improperly* admitted.  *See United States v. Caballero*, 277 F.3d 1235, 1242 (10th Cir. 2002) (finding no error "when the court struck [disputed] testimony and instructed the jury to disregard it").  Second, the district court cured any unfair prejudice that might have accrued from the statement by prophylactically issuing to the jury two clear instructions—at the beginning and end of the proceedings.  More specifically, prior to trial, the court informed the jury that both parties may object to witness testimony and specifically explained, "If I sustain the objection, this means that you are not to pay attention to the question, and [if] . . . the witness has already answered, . . . you are to disregard

---

[6]  As a preliminary matter, we note that the foregoing testimony does not appear to reference any fear on the part of the CI—i.e., the ostensible focus of Mr. Ibarra-Diaz's objection.  In context, it only plainly suggests that *Mr. Estrada* may have been afraid of Mr. Ibarra-Diaz.  Nevertheless, because we discern no Confrontation Clause error in this exchange, this seeming incongruity is immaterial to our analysis and we need not attempt to resolve it.

16

the witness's answer."  R., Vol. 3, at 10; *see also id.* (". . . I expect you to . . . not go back to the jury room and talk about evidence that I told you not to consider.").  Second, the court provided a similar, more specific admonition prior to the case being submitted to the jury: "[A]ny evidence ordered stricken by the court[] must be entirely disregarded."  R., Vol. 1, at 41 (Jury Instructions, filed May 9, 2013).

We "presume[] that jurors will conscientiously observe the instructions and admonitions of the court."  *United States v. Battles*, 745 F.3d 436, 453 (10th Cir. 2014), *cert. denied*, 135 S.Ct. 355 (2014) (quoting *United States v. Greer*, 620 F.2d 1383, 1390 (10th Cir. 1980)); *see also United States v. Carter*, 973 F.2d 1509, 1513 (10th Cir. 1992) ("We presume jurors will remain true to their oath and conscientiously follow the trial court's instructions."); *cf. United States v. Morgan*, 748 F.3d 1024, 1041 (10th Cir. 2014) (explaining that mistrials are often unnecessary because "[a] cautionary instruction is ordinarily sufficient to cure any alleged prejudice to the defendant" (quoting *United States v. Peveto*, 881 F.2d 844, 859 (10th Cir. 1989))).  Thus, any potential prejudice engendered by the detective's testimony about the CI ostensibly being afraid of Mr. Ibarra-Diaz was cured by the district court's clear instructions.  Therefore, this contention of error is without merit.

17

Third, Mr. Ibarra-Diaz argues that his confrontation rights were violated by the detective's testimony regarding the CI's role in setting up the transaction. Specifically, he objects to the detective's testimony that the CI told him (the detective) that Mr. Ibarra-Diaz had "some dope" for sale and that the CI told Mr. Ibarra-Diaz that he knew of someone who was interested in buying the drugs. The following exchange occurred after defense counsel asked the detective whether the CI wore a body wire when communicating with Mr. Ibarra-Diaz:

> [DEFENSE COUNSEL:] Did you put a body wire on your confidential informant when they were going to see if they could negotiate for this $18,000 drug transaction?
>
> [THE DETECTIVE:] No. This informant wasn't under my control. It's not like I sent this informant to his house. If this informant was under my control and we would have sent him to a house to make a purchase or develop information or something, they would wear some type of wire, recording. But this is something that the informant called me out of the blue saying Jesus Ibarra has some dope on him or he had an amount of dope he's looking to get rid of. That's when the informant says, hey, I know a guy that's interested in buying some.

R., Vol. 3, at 102–03.

As a general rule, "[a] confidential informant's statements to a law enforcement officer are clearly testimonial." *United States v. Lopez-Medina*, 596 F.3d 716, 730 (10th Cir. 2010). The government does not argue that the CI was unavailable to testify or that Mr. Ibarra-Diaz had a prior opportunity to cross-examine the witness. Instead, the government contends that the statement "did

not violate the defendant's confrontation rights because his counsel elicited this statement during his cross-examination of [the detective]." Aplee. Answer Br. at 19 (citing *United States v. McKenzie*, 532 F. App'x 793, 797 (10th Cir. 2013) ("[B]ecause [Defendant] elicited through his cross-examination of [the agent] the information he complains was admitted in violation of the Confrontation Clause, there was no Confrontation Clause violation.")). Be that as it may, we conclude that this third challenge is without merit on an alternative basis: the statement was not hearsay.

More specifically, even assuming that the detective's testimony relating to the CI's communication to him—which generally informed the detective that the CI had discussed with Mr. Ibarra-Diaz setting up a drug transaction—was testimonial, that is not enough: the Confrontation Clause "does not bar the use of statements (even testimonial statements) that are not hearsay, *i.e.*, that are offered for purposes other than establishing the truth of the matter asserted." *Edwards*, 782 F.3d at 560. And it is clear to us that the detective's testimony was not offered for a hearsay purpose. In this regard, the detective was not offering this testimony to establish that Mr. Ibarra-Diaz had told the CI that he had "some dope on him" or that the CI had told Mr. Ibarra-Diaz that the CI had an interested buyer (and certainly not to show that Mr. Ibarra-Diaz actually had dope in his possession)—that is, it was not offered to prove the truth of these matters asserted—but rather to explain why he did not put a body wire on the CI for this

19

significant drug transaction—i.e., because, unlike situations where the detective is in control of an informant from the outset and, more specifically, of the circumstances of the informant's dealings with a potential target, in this instance, the CI just called the detective "out of the blue" about the possible drug transaction with Mr. Ibarra-Diaz. Thus, the detective's testimony was not offered for the truth of the matters asserted; that is, it was not hearsay. *See, e.g.*, *Lewis*, 594 F.3d at 1282 ( "For example, a party may offer a statement by *A* that the Yankees won the pennant in 1999. The matter asserted by *A* is that the Yankees were American League champions in 1999. But if the party offering *A*'s statement is merely trying to prove that A was capable of speech, then *A*'s statement is not offered into evidence for the truth of the matter asserted, and the statement is not hearsay."). Accordingly, in our view, the admission of the detective's testimony at issue here was not error. And, even if it was, it would not have been error of the clear or obvious sort.

**4**

Mr. Ibarra-Diaz next claims that it was a violation of his confrontation rights for the jury to hear testimony from the detective that the CI told him that he gave the detective's phone number to Mr. Ibarra-Diaz. Immediately following the exchange at issue in Part 1, *supra*, the detective testified as follows:

> [THE GOVERNMENT:]  With that CI, did you actually set up a
> . . . drug transaction with Jesus Ibarra?

20

[THE DETECTIVE:]  Yes.

Q  And how did that occur?

A  Basically, received a phone call on my phone.  My CI had given Jesus my phone number . . . .

R., Vol. 3, at 31.

Again, this testimony provides no basis for relief under the Confrontation Clause because it contains no "statement" from the CI (i.e., the ostensible declarant), much less a hearsay one.  Rather than a "statement," the testimony recounted nonverbal conduct (i.e., providing a phone number) with no indication that the conduct was intended to be an assertion.[7]  Thus, we find nothing in this portion of the testimony that would implicate the Confrontation Clause.[8]

---

[7]  *See* Fed. R. Evid. 801(a) ("'Statement' means a person's . . . nonverbal conduct, if the person intended it as an assertion."); *see also United States v. Kool*, 552 F. App'x 832, 834 (10th Cir. 2014) ("Although the Supreme Court has not ruled on when nonverbal conduct constitutes hearsay under *Crawford*, we can assume that it will adopt the same view as the Federal Rules of Evidence.  Under those rules, nonverbal conduct cannot be hearsay unless it constitutes a statement, and it is a statement only if the declarant 'intended it as an assertion.'" (quoting Fed. R. Evid. 801(a))).

[8]  To be sure, we recognize that Mr. Ibarra-Diaz's challenge to the admission of this statement may rest on the (arguably well-founded) suspicion that the detective acquired his information about the CI giving Mr. Ibarra-Diaz the detective's phone number from an out-of-court statement of the CI—which, if articulated in court, would have been (as the argument would go) hearsay. However, if he truly suspected that the detective was relying on embedded (unstated) hearsay, Mr. Ibarra-Diaz had a mechanism to ferret this out: the testimony was open to a proper objection on the grounds of lack of personal knowledge (i.e, there was no predicate for how the detective knew that the CI gave his phone number to Mr. Ibarra-Diaz).  *See* Fed. R. Evid. 602 ("A witness

(continued...)

21

**5**

Mr. Ibarra-Diaz's fifth challenge relates to the detective's testimony that the CI was the person who told the detective that Mr. Ibarra-Diaz had a pound of methamphetamine available to sell for $18,000. During the detective's initial recollection of the investigation into Mr. Ibarra-Diaz, he testified as follows:

> [THE GOVERNMENT:] . . . . Was there ever a time that it was discussed how much you would pay in this drug transaction?
>
> [THE DETECTIVE:] Yeah. One pound of methamphetamine for $18,000.
>
> Q And that wasn't discussed with Ana, that was discussed through the CI; is that correct?
>
> A Correct.

R., Vol. 3, at 31–32.

---

[8](...continued)
may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *see, e.g.*, *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997) (noting that Fed. R. Evid. 602 "provides that a witness's testimony must be based on personal knowledge"); *see also Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1123 (10th Cir. 2005) (discussing the requirements of Fed. R. Evid. 602). If, following such an objection, the detective testified that he only knew about the CI's delivery of his phone number to Mr. Ibarra-Diaz because of the CI's (hearsay) communication to him of this information, then Mr. Ibarra-Diaz could have made a proper hearsay objection and at least argued that his confrontation rights were also violated by the admission of the detective's testimony. But Mr. Ibarra-Diaz made no such lack-of-personal-knowledge objection; therefore, any ostensible hearsay statement underlying the detective's testimony remained unarticulated, and there was no basis then—or now—for a Confrontation Clause challenge to this testimony.

Again, this testimony provides no basis for relief under the Confrontation Clause.  Although the detective alludes to a conversation involving the CI, he offers into evidence no testimonial hearsay statement of the CI.  Accordingly, there is no foundation for a violation of the Confrontation Clause.  Mr. Ibarra-Diaz's challenge as it relates to this statement must fail.

**6**

In his sixth challenge, Mr. Ibarra-Diaz claims that it was a violation of his confrontation rights for the jury to learn through the detective's testimony that the CI "suggested to [the detective] that he pretend not to be able to speak Spanish and to be a stripper's boyfriend from Salina."  Aplt. Opening Br. at 11.  This argument relates to the following exchange with the detective:

> [THE GOVERNMENT:]  Detective, do you speak Spanish?
>
> [THE DETECTIVE:]  I do.
>
> Q  Is it a native language for you or a first language?
>
> A  My first language, yes.
>
> Q  And have you participated in undercover operations in which you have spoken Spanish?
>
> A  Yes.
>
> Q  And have you participated in undercover operations in which you have said that you do not speak Spanish?
>
> A  No, this is my first one.

23

Q It was. And why did you on this occasion decide to portray yourself as somebody who does not speak Spanish?

A It was something to do with the CI said to me, he goes, I could tell him that you are this stripper's boyfriend from Salina and that you don't speak any Spanish, so I just went along and said that's fine and that's what we went with.

R., Vol. 3, at 32.

It is somewhat difficult to ascertain the truth of the matter for which Mr. Ibarra-Diaz argues this statement was asserted. Regardless, the testimony does not constitute hearsay. The statement was only offered to explain the detective's conduct and why he chose to conceal his Spanish fluency on this particular occasion. *See United States v. Martinez*, 979 F.2d 1424, 1429 (10th Cir. 1992) ("[T]hose statements were not hearsay declarations because they were not introduced for the purpose of establishing the truth of the matters asserted in the statements, but rather, for the purpose of explaining the conduct of the government agents."). Because it was not offered for the truth of the matter asserted, the testimony did not constitute hearsay, and thus did not violate Mr. Ibarra-Diaz's rights under the Confrontation Clause.

**7**

The seventh challenge focuses on the detective's statement that he had prior information indicating that Mr. Ibarra-Diaz had purchased a Ford Explorer—the same type of vehicle in which Mr. Estrada and the methamphetamine arrived at the scene. The relevant testimony occurred when the government presented the

24

detective with several photographs during its case-in-chief:

[THE GOVERNMENT:]  Do you recognize these items?

[THE DETECTIVE:]  Yes.

Q  The items in this picture?

A  Yes.

Q  How are you able to do so?

A  Exhibit 1 is gonna be the Ford Explorer that Ricardo Estrada came driving in.  And it's got a 30-day tag.  And I also had information prior to this that Jesus had purchased a vehicle which was a Ford Explorer.

R., Vol. 3, at 72.

This testimony, again, does not offer a hearsay statement.  The detective's remark that he "also had information" that Mr. Ibarra-Diaz had purchased a Ford Explorer did not communicate the "oral assertion, written assertion, or nonverbal conduct" of any out-of-court declarant.  Fed. R. Evid. 801(a).  The detective testified in court about the information in his possession and never specified an assertion from any out-of-court declarant that had provided that information. Therefore, the complained-of testimony is not hearsay and, consequently, does not implicate the Confrontation Clause.[9]  We reject Mr. Ibarra-Diaz's challenge

_____

[9]      Mr. Ibarra-Diaz's seventh challenge to the admission of the detective's testimony likely stems from a similar set of circumstances as his fourth challenge discussed above, and is consequently plagued by a similar problem.  *See supra* note 8.  The detective testified that he "had information" that Mr. Ibarra-Diaz had purchased a Ford Explorer—the same kind of vehicle that

(continued...)

25

on this ground.

# 8

In his eighth challenge, Mr. Ibarra-Diaz argues that his confrontation rights were violated by the detective's statement that Mr. Estrada told him that Mr. Ibarra-Diaz had sent Mr. Estrada to Towne West with the methamphetamine. The relevant statement occurred during the following exchange:

> [THE GOVERNMENT:] Did you actually go ahead and give a bust signal then after Jesus Ibarra left the scene?
>
> [THE DETECTIVE:] It wasn't really a bust signal. I mean, they see me take this guy down to the ground so they know something isn't right. And they see this vehicle leave and I'm telling them stop the blue car . . . the car stop, the blue car, you know, and they finally get the message and I see a bunch of cars headed to the north of the mall to make that car stop.
>
> Q Why did you have them stop this car if you hadn't actually seen any drugs at that point?
>
> A 'Cause he had told me –– Ricardo had told me that Jesus ––
>
> [DEFENSE COUNSEL:] I'm going to object, Your Honor. It's hearsay.
>
> THE COURT: I'm going to let the witness testify, but

---

[9](...continued)
Mr. Estrada drove to the Towne West drug transaction—without explaining the basis for his information. R., Vol. 3, at 72. Mr. Ibarra-Diaz may have suspected that the detective's information regarding this matter was predicated on an unarticulated hearsay statement. However, because Mr. Ibarra-Diaz did not lodge a lack-of-personal-knowledge objection, *see* Fed. R. Evid. 602, any such statement remained just that—unarticulated. And, therefore, there was no foundation then—or now—for a Confrontation Clause objection.

> only for the purpose of then explaining what he did, what [the detective] did as a result. So, you're not to consider what Estrada, who is not a witness here, told him for the truth of it, just for the purpose of explaining why [the detective] took the action he did. Go ahead.
>
> A Thank you, sir. Jesus told me –– I'm sorry –– Ricardo told me that Jesus Ibarra had sent him over here with a pound of meth to bring over here to the mall and that it was in the car [i.e, Ricardo Estrada's car].

R., Vol. 3, at 56–57.

We find no error in this limited admission of this testimony. To be sure, the detective recounted the statement of an out-of-court declarant. But the statement was not offered for the truth of the matter asserted. Rather, it was offered to explain the detective's conduct—that is, his request to the other law enforcement officers to stop the vehicle containing Mr. Ibarra-Diaz, after the detective received confirmation from Mr. Estrada that he had actually brought methamphetamine to the scene in his car for the arranged drug transaction. Thus, the statement did not constitute hearsay. We have previously endorsed the admission of similar testimony for this limited purpose. *See, e.g.*, *United States v. Ledford*, 443 F.3d 702, 708 (10th Cir. 2005) (admitting statement to explain why an officer entered a bedroom, not to prove the utterance of a threat); *United States v. Trujillo*, 136 F.3d 1388, 1396 (10th Cir. 1998) (concluding that descriptive testimony was not offered for its truth, but "only explain[ed] what [agents] were doing in the FBI office"); *United States v. Bowser*, 941 F.2d 1019,

27

1021 (10th Cir. 1991) (per curiam) (admitting testimony revealing that a CI told an officer the defendant had a gun not for its truth, but "merely to explain the officer's aggressive conduct towards the defendant").

Further, the district court expressly instructed the jury to appropriately limit its consideration of the testimony, and we presume that jurors will conscientiously observe such an instruction. *Battles*, 745 F.3d at 453. In light of the non-hearsay purpose for which the testimony was admitted, as well as the court's limiting instruction to that effect, we find no error in the admission of the detective's testimony.

**9**

Finally, Mr. Ibarra-Diaz challenges the admission of the detective's statement that Mr. Estrada told him there was additional methamphetamine at the house he shared with Mr. Ibarra-Diaz and Ms. Valeriano-Trejo. The detective testified as follows:

> [THE GOVERNMENT:] Did you –– beyond what we've heard here on the recording, did you speak with Ricardo at the scene?
>
> [THE DETECTIVE:] Yes.
>
> Q Can you tell the Court where he was at?
>
> A He was in the back of the patrol vehicle at the time.
>
> Q And did he actually request to speak to you?
>
> A Yes.

28

Q  And what did he say?

A  He advised me that there was more additional —— he said a pound and a half of meth back at their house.

R., Vol. 3, at 71.

The government concedes that this statement constitutes testimonial hearsay and that its admission thus violates the Confrontation Clause.  The government further concedes that this error was plain (i.e., clear or obvious error).  We proceed therefore to address the remaining two prongs of the plain-error test because "[w]e see no reason to question this conclusion" of the government.  *United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014); *see also Greenlaw v. United States*, 554 U.S. 237, 243 (2008) (noting judicial fealty to the "principle of party presentation[,] . . . . rely[ing] on the parties to frame the issues for decision").

Regarding the third prong of the test, Mr. Ibarra-Diaz "bears the burden of establishing the error impacted substantial rights by demonstrating the outcome of the trial would have been different but for the error."[10]  *United States v. Harlow*, 444 F.3d 1255, 1261 (10th Cir. 2006).  This he cannot do.

---

[10]    On this point, Mr. Ibarra-Diaz appears to misapprehend the burden of proof.  In his Opening Brief, he argues that "the Government certainly cannot carry its burden of proving that the constitutionally offensive evidence did not contribute to the verdict."  Aplt. Opening Br. at 13.  It is *his* burden, however, to establish that the evidence *did* affect the verdict.  *See, e.g.*, *Harlow*, 444 F.3d at 1261.

More specifically, "[a]n error seriously affects the defendant's substantial rights, as those terms are used in the plain-error test, when the defendant demonstrates 'that there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'" *Rosales-Miranda*, 755 F.3d at 1258 (quoting *United States v. Mendoza*, 698 F.3d 1303, 1310 (10th Cir. 2012)). In light of the overwhelming evidence of his guilt, Mr. Ibarra-Diaz cannot establish a reasonable probability that the admission of Mr. Estrada's statement through the detective affected the outcome of the trial.

As explicated further in Part D, *infra*, the jury was presented with ample evidence to conclude that Mr. Ibarra-Diaz possessed with intent to distribute the methamphetamine found in the Ford Explorer and at his residence. Mr. Ibarra-Diaz's recorded statements from the Towne West shopping mall would have indicated to a rational factfinder that he was waiting for Mr. Estrada to bring the methamphetamine to the parking lot and also suggested that he exercised considerable influence over the situation by guiding the actions of Mr. Estrada and Ms. Valeriano-Trejo. Almost immediately after Mr. Estrada suggested that the detective might be a law enforcement officer, Mr. Ibarra-Diaz responded by fleeing the scene. And on the heels of the buy/bust operation at the mall—where officers recovered 447.8 grams of methamphetamine mixture secreted on the Ford Explorer—officers recovered an additional 432.1 grams of methamphetamine mixture at the residence with which Mr. Ibarra-Diaz was clearly associated. In

30

that regard, it is notable that law enforcement recovered documents there with Mr. Ibarra-Diaz's name and picture on them.

This overwhelming quantum of evidence belies any notion that, but for the admission of Mr. Estrada's statement through the detective, there is a reasonable probability that the jury would have chosen to acquit Mr. Ibarra-Diaz. Based upon a careful examination of the record as a whole, we conclude that admission of this testimonial hearsay had no impact on Mr. Ibarra-Diaz's substantial rights. *See United States v. Atencio*, 435 F.3d 1222, 1236 (10th Cir. 2006) (holding that a similar constitutional error was harmless beyond a reasonable doubt in light of other significant testimonial and documentary evidence of drug activity); *United States v. Corchado*, 427 F.3d 815, 818–19 (10th Cir. 2005) (finding no reasonable probability of a different result where "ample record evidence aside from Defendant's prior conviction testimony" supported the verdict). Accordingly, Mr. Ibarra-Diaz is not entitled to relief with respect to any of his claims arising under the Confrontation Clause.

**B**

Mr. Ibarra-Diaz next argues that he was unfairly prejudiced by the admission of inflammatory testimony from the detective. During its case-in-chief, the government played the following excerpt from the body-wire recording that captured the confrontation between the detective and Mr. Estrada:

> [Mr. Ibarra-Diaz:] Go up to the car

31

[The detective:]  To the car

    . . . .

[The detective:]  You think I am a cop

[Mr. Estrada:]  You are Ricky

[The detective:]  Ricky?

    . . . .

[The detective:]  What are you talking about

[Mr. Estrada:]  You don't remember me

[The detective:]  Huh

[Mr. Estrada:]  You don't remember me

    . . . .

[Mr. Ibarra-Diaz:]  I am going over there

[The detective:]  42[,] this car over here

[Mr. Estrada:]  Remember when I told you I was going to give him . . . .  I was going to give this guy

[The detective:]  Why did you tell him I was a cop[?]

[Mr. Estrada:]  What??  No

[The detective:]  Why did you say I was a cop[?]

[Mr. Estrada:]  I didn't say you were the police, don't tell him

[The detective:]  Do you have that stuff inside[?]

[Mr. Estrada:]  Yes, because he told me to take it

[The detective—while taking Mr. Estrada into custody:] Stop the blue car . . . stop the blue car, stop the blue car . . . get the blue car . . . get the blue car please . . . this guys know [sic] I am a f***ing cop . . . I interviewed this mother f***er . . . this guys know [sic] I am a f***ing cop . . . [t]hat's the guy I interviewed at the county . . . .

R., Vol. 4, at 9–11.[11]

The government paused the recording, and resumed its questioning of the detective. At that point, the jury heard the following exchange:

[THE GOVERNMENT:] A little worked up there?

[THE DETECTIVE:] A little bit.

Q Were you scared at that point?

A Yeah. There was a lot going through your body, I mean, there's –– it's hard to explain because you –– we live it, but, I mean, this ain't the movies, this ain't Hollywood, this is the real deal, I mean, and I'm very calm at first when I say please stop the car because he's backing up and, you know, Ana could be looking at me still because they haven't passed me. So I'm just being cool and I'm just talking into the body wire like, hey, please stop that car, please stop the car. I'm buying time. I don't want to put my hand on this guy in front of me yet because if I do take him into custody or throw him down to the ground, now we definitely could get into a high speed chase with this guy because he could be like, okay, it's all — it's blown. So as soon

---

[11] Because the trial transcript only indicates that a "portion" of the audio recording was played for the jury, *see* R., Vol. 3, at 69, it is unclear how much of the recording was played immediately prior to the relevant exchange. According to the government and the detective, the jury heard the entire thirty-to-forty minute unedited audio recording (with the exception of set-up procedures that were recorded prior to Mr. Ibarra-Diaz's arrival on the scene) during the government's examination of the detective. *Id.* at 61–62.

as they pass to the north, they pass JC Penney, that's when I get worked up, I guess. This guy, I tell him to get to the ground first, he doesn't want to do it. He still has his hand in his pocket. I don't have a gun on me. My gun is in my car. There's a lot going on through your head. I mean, I'm —— anything could happen, anything could happen. And the cops aren't coming fast enough, even though it's 15 seconds; but it seems inside your body like it's, like, five minutes. I mean, it's like a long time. And it's because all that stress is pumping through your body. I mean, there's a lot going on. And I apologize for my language, but I was worked up. I mean, I got two kids I'm raising by myself so I don't want nothing to happen to me. And it's just part of the job, too, though.

R., Vol. 3, at 69–70.

Mr. Ibarra-Diaz argues that this testimony was irrelevant, inflammatory, and unfairly prejudicial. According to him, "[i]t was only with these improper, extraneous statements that the Government painted a picture of a dangerous, known drug dealer who caused the detective to become afraid for his safety." Aplt. Opening Br. at 17. Because Mr. Ibarra-Diaz failed to object or otherwise argue to the district court that this testimony deprived him of a fair trial, we review this claim for plain error. *See Cooper*, 654 F.3d at 1117.

Although Mr. Ibarra-Diaz never explicitly argues that the admission of this testimony violated Federal Rule of Evidence 403, that appears to be the gist of his claim. As a general matter, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *United States v. Bowling*, 619 F.3d 1175, 1182 (10th Cir. 2010) (quoting Fed. R. Evid.

401). Relevant evidence is generally admissible. *See* Fed. R. Evid. 402. "Rule 403, however, permits a court to 'exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *United States v. Archuleta*, 737 F.3d 1287, 1292 (10th Cir. 2013) (quoting Fed. R. Evid. 403), *cert. denied*, 134 S.Ct. 2859 (2014); *accord United States v. Kupfer*, 797 F.3d 1233, 1242 (10th Cir. 2015).

The government argues that there was no error in the admission of the testimony because it was relevant, "either as an explanation of what factually happened during the incident or to provide context for such explanation." Aplee. Answer Br. at 29. And it contends that the comment about the detective's family "was relevant, even if marginally so, to explain to the jury that [the detective] reacted the way he did because he thought he was in a stressful situation." *Id.* at 30. We disagree. A significant portion of the detective's testimony was irrelevant, and any probative value was likely to be substantially outweighed by the danger of confusing the issues or misleading the jury.

Nevertheless, that fact alone does not entitle Mr. Ibarra-Diaz to relief under the plain-error standard of review. Even if the district court erred in admitting this testimony, such error would not have been clear or obvious. Mr. Ibarra-Diaz has completely failed to support with relevant legal authorities his contention that

35

the district court clearly or obviously erred in admitting the testimony. *See, e.g.*, *United States v. DeChristopher*, 695 F.3d 1082, 1091 (10th Cir. 2012) ("An error is plain if it is clear or obvious under current, well-settled law. In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue." (quoting *United States v. Thornburgh*, 645 F.3d 1197, 1208 (10th Cir. 2011)). Thus, with no authority to support his argument, he has failed to show that any such error was clear or obvious.

Moreover, even if Mr. Ibarra-Diaz could demonstrate clear or obvious error, his claim would necessarily fail at the third prong of plain-error review. That is, he cannot show that the alleged error had any impact on his substantial rights. Mr. Ibarra-Diaz's assertion of prejudice apparently stems from his view that a reasonable jury would have understood the detective as expressing fear of violence from *him*. However, the most natural reading of the passage suggests that the detective was afraid of *Mr. Estrada*—not Mr. Ibarra-Diaz. The detective testified that he did not "get worked up" until Mr. Ibarra-Diaz and Ms. Valeriano-Trejo "pass[ed] to the north" and were leaving the scene. R., Vol. 3, at 70. At that point, the principal focus of the detective's testimony became Mr. Estrada: "This guy, I tell him to get to the ground first, he doesn't want to do it. He still has his hand in his pocket. I don't have a gun on me. My gun is in my car." *Id.* If the detective's testimony was, as Mr. Ibarra-Diaz contends, intended to "paint[] a picture of a dangerous, known drug dealer who caused the detective to become

36

afraid for his safety," Aplt. Opening Br. at 17, then the depiction of such a drug dealer actually related to *Mr. Estrada*—not Mr. Ibarra-Diaz. Thus, even if we were to accept the premise that it was clear or obvious error for the district court to admit this passage of the detective's testimony, Mr. Ibarra-Diaz would not be entitled to relief because the error had no impact on his substantial rights.

## C

Mr. Ibarra-Diaz next claims that he was deprived of a unanimous jury verdict by an allegedly duplicitous indictment. He acknowledges that the indictment was not duplicitous on its face. At trial, however, the government introduced evidence of the two separate bundles of methamphetamine that were taken, respectively, from the Ford Explorer and from the residence that Mr. Ibarra-Diaz apparently shared with Ms. Valeriano-Trejo and Mr. Estrada. Mr. Ibarra-Diaz contends that the indictment's sole count was rendered duplicitous by the presentation of these two factual predicates for the same offense. Mr. Ibarra-Diaz concedes that he raises this duplicity challenge for the first time on appeal. As he sees it, he is nevertheless entitled at least to plain-error review. *See* Aplt. Opening Br. at 18 ("Because there was no objection raised at the time of trial, however, the defendant acknowledges that the appropriate standard of review is that of plain error."). We disagree. As a result of Mr. Ibarra-Diaz's failure to raise his duplicity challenge in the district court, that challenge is waived.

An indictment is duplicitous if it "charges the defendant with two or more separate offenses in the same count." *United States v. Trammell*, 133 F.3d 1343, 1354 (10th Cir. 1998) (citing *United States v. Haddock*, 956 F.2d 1534, 1546 (10th Cir. 1992)). Among other concerns, a duplicitous indictment "'presents a danger that the jury may convict a defendant although not reaching a unanimous agreement on precisely which charge is the basis for the conviction,' which would run afoul of 'the Sixth Amendment guarantee to a unanimous jury verdict.'" *United States v. Washington*, 653 F.3d 1251, 1262 (10th Cir. 2011) (alterations and omission omitted) (quoting *United States v. Schneider*, 594 F.3d 1219, 1228 (10th Cir. 2010); *United States v. Linn*, 31 F.3d 987, 991 (10th Cir. 1994)).

As the government argues, however, Mr. Ibarra-Diaz has waived his duplicity challenge. A "challenge to an indictment based on duplicity must be raised prior to trial . . . . Raising the objection at the close of the government's case is too late." *Trammell*, 133 F.3d at 1354 (omission in original) (quoting *United States v. Hager*, 969 F.2d 883, 890 (10th Cir. 1992)); *see Schneider*, 594 F.3d at 1228 n.9 (noting that an untimely challenge to the duplicity of an indictment was waived); *United States v. Henry*, 504 F.2d 1335, 1338 (10th Cir.1974) ("The proper way to attack a duplicitous indictment is by a motion to elect . . . . [T]his is a motion which must be made prior to trial or it is waived." (citations omitted)); *cf. United States v. Haber*, 251 F.3d 881, 888–89 (10th Cir. 2001) ("In this circuit, a defendant's failure to 'timely challenge his indictment

38

on duplicity grounds waives any later challenge based on a failure to use a special verdict form to avoid the alleged duplicity problem.'" (alteration and omission omitted) (quoting *Trammell*, 133 F.3d at 1354)).

Mr. Ibarra-Diaz argues that the duplicitous nature of the indictment did not become apparent until during trial.[12] However, even assuming this is correct, Mr. Ibarra-Diaz did not act then—when the ostensible defect surfaced. That is, Mr. Ibarra-Diaz did not raise a duplicity objection during trial. He offers no explanation for this failing, and we deem it fatal.[13] The general rule of waiver

---

[12] In this regard, a panel of our court observed that other courts have "suggested that, where the duplicity of the indictment later becomes apparent, a defendant cannot be faulted for failing to object before trial." *United States v. Forster*, 549 F. App'x 757, 764 n.3 (10th Cir. 2013); *see United States v. Pietrantonio*, 637 F.3d 865, 871 (8th Cir. 2011) (recognizing that an indictment may be "rendered duplicitous by the evidence presented at trial"); *United States v. Coiro*, 922 F.2d 1008, 1013 (2d Cir. 1991) (holding that a pre-trial objection was not necessary to the alleged *multiplicity* of an indictment because "neither the nature of [the defendant's] conduct nor the fact that [two counts] charge the same conduct was evident from the face of the indictment.").

[13] Although neither party cites to Federal Rule of Criminal Procedure 12, its provisions operate to generally waive duplicity challenges that are not raised prior to trial, *see* Fed. R. Crim. P. 12(b)(3)(B) (2013) (noting that motions alleging a defect in the indictment must be brought before trial); *id.* at 12(e) (stating that a party waives any Rule 12(b)(3) defense or objection not timely raised). But they also allow for an exception to waiver based on a showing of "good cause." *Id.* at 12(e). "After [Mr. Ibarra-Diaz's] trial—indeed, after this panel heard oral argument—amendments to Rule 12 took effect as part of 2014 revisions of the Federal Rules of Criminal Procedure. These amendments resulted in the repositioning of certain sections of Rule 12 within the rule and also language changes." *United States v. Madsen*, 614 F. App'x 944, 953 (10th Cir. 2015). However, because Mr. Ibarra-Diaz does not invoke Rule 12 at all, much less seek to avail himself of its good-cause exception, we have need no need to

(continued...)

regarding untimely duplicity challenges should govern the resolution of this claim.[14]

## D

Finally, Mr. Ibarra-Diaz challenges the sufficiency of the evidence adduced at trial to support his conviction.[15] "We review de novo the sufficiency of the evidence upon which [Mr. Ibarra-Diaz] was convicted, 'ask[ing] only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.'" *United States v. Bader*, 678 F.3d 858, 873 (10th Cir. 2012) (second alteration in original) (quoting *United States v. McCane*, 573 F.3d 1037, 1046 (10th Cir. 2009)). "Rather than examining the evidence in 'bits and pieces,' we evaluate the

[13](...continued)
parse that rule here—be it the language in effect at the time of trial or that currently.

[14]     Even if we accorded Mr. Ibarra-Diaz the benefit of plain-error review, *see Forster*, 549 F. App'x at 763–65 (reviewing for plain error a challenge to an allegedly duplicitous indictment that was "arguably waived" where indictment was not facially duplicitous), it would offer him no succor. Mr. Ibarra-Diaz acknowledges that he bears the burden under the second prong of the plain-error test of showing an error "that is plain, which means clear or obvious under current law." Aplt. Opening Br. at 18–19. Nevertheless, he fails to cite a single case from either this court or the Supreme Court to support his argument that the district court plainly erred. Accordingly, he has not satisfied this necessary second prong.

[15]     Mr. Ibarra-Diaz preserved this argument by moving for an acquittal at the conclusion of the government's case-in-chief. *See* Fed. R. Crim. P. 29.

sufficiency of the evidence by considering the collective inferences to be drawn from the evidence as a whole." *Id.* (alteration omitted) (quoting *United States v. Wilson*, 107 F.3d 774, 778 (10th Cir. 1997)). "We may not assess the credibility of witnesses or weigh conflicting evidence, as these tasks are exclusively for the jury." *United States v. Bowen*, 527 F.3d 1065, 1076 (10th Cir. 2008). And although it must be substantial, the evidence "need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt." *United States v. Rufai*, 732 F.3d 1175, 1188 (10th Cir. 2013) (quoting *United States v. McKay*, 715 F.3d 807, 812 (10th Cir. 2013)).

"To support a conviction for possession with intent to distribute, the government must establish the defendant (1) knowingly possessed the controlled substance and (2) possessed it with the intent to distribute." *United States v. Parada*, 577 F.3d 1275, 1283 (10th Cir. 2009). "The possession of the controlled substance may be actual or constructive. Constructive possession may be established by circumstantial evidence and may be joint among several individuals." *Id.* at 1283 n.8 (quoting *United States v. McKissick*, 204 F.3d 1282, 1291 (10th Cir. 2000)).

"Constructive possession exists where the defendant knowingly has the power to exercise control or dominion over the item." *United States v. Bagby*, 696 F.3d 1074, 1080–81 (10th Cir. 2012) (alteration omitted) (quoting *United States v. Al-Rekabi*, 454 F.3d 1113, 1118 (10th Cir. 2006)). "In the narcotics

41

context, constructive possession is 'an appreciable ability to guide the destiny of the [contraband].'" *Id.* at 1081 (quoting *United States v. Ramirez*, 479 F.3d 1229, 1250 (10th Cir. 2007)), *abrogated on other grounds as recognized in Bagby*, 696 F.3d at 1081). In situations where "the contraband is found in an area of joint occupancy, there must also be proof of 'some connection or nexus between the defendant and' the contraband. Such a nexus is shown where the evidence 'plausibly supports the inference that the defendant had knowledge of and access to' the contraband." *Id.* at 1081 (alteration omitted) (citation omitted) (quoting *United States v. King*, 632 F.3d 646, 651 (10th Cir. 2011)).

In the indictment, the government advanced two theories to establish Mr. Ibarra-Diaz's guilt: liability as (1) principal, and (2) as an aider-and-abettor. *See* R., Vol. 1, at 9 (Indictment, filed Jan. 16, 2013). However, notably, Mr. Ibarra-Diaz confines his sufficiency challenge to the aiding-and-abetting aspect of the charges against him. *See, e.g.*, Aplt. Opening Br. at 22 ("In this case, the Government was required to show, in part, that Mr. Ibarra-Diaz aided and abetted in the possession of the methamphetamine . . . . The appellant submits that the Government failed in doing so—whether it was relying on the methamphetamine in Mr. Estrada's Ford Explorer, or on the methamphetamine in the house.").

"Under 18 U.S.C. § 2, anyone who 'aids, abets, counsels, commands, induces or procures' the commission of an offense is 'punishable as a principal.'" *United States v. Cesareo-Ayala*, 576 F.3d 1120, 1125 (10th Cir. 2009) (quoting 18

42

U.S.C. § 2). "[A] person aids and abets a crime when (in addition to taking the requisite act) he intends to facilitate that offense's commission." *Rosemond v. United States*, --- U.S. ----, 134 S.Ct. 1240, 1248 (2014). To sustain a conviction for aiding and abetting, the government "must prove that the defendant (1) 'willfully associated himself with the criminal venture' and (2) sought 'to make the venture succeed through some action of his own.'" *United States v. Rosalez*, 711 F.3d 1194, 1205 (10th Cir. 2013) (alteration omitted) (quoting *United States v. Jackson*, 213 F.3d 1269, 1292 (10th Cir.), *vacated on other grounds*, 531 U.S. 1033 (2000)). "'Mere presence at a crime scene' or knowledge alone that 'a crime is being committed' is insufficient." *Id.* (quoting *United States v. Delgado-Uribe*, 363 F.3d 1077, 1084 (10th Cir. 2004)).

Specifically, relying on *Rosalez*, *supra*, and *United States v. Burks*, 678 F.3d 1190, 1198 (10th Cir. 2012), Mr. Ibarra-Diaz argues that the government failed to prove that he willfully associated with the criminal venture. Specifically, he contends that (1) the detective "never had any conversation with Mr. Ibarra-Diaz concerning the methamphetamine"; (2) nothing in their conversation at the mall "would indicate that they were referring to drugs-for example no 'code' words were used–or that Mr. Ibarra-Diaz had any notion that Mr. Estrada had methamphetamine in the Ford Explorer"; and (3) no physical evidence or testimony linked him to the methamphetamine or drug packaging

43

found in the Explorer or at his residence.  Aplt. Opening Br. at 23–24.  We find

this argument to be meritless.

As a threshold matter, we note that Mr. Ibarra-Diaz has waived any

challenge to his conviction as a *principal* by failing to raise or brief the issue.

*See, e.g.*, *Bowling*, 619 F.3d at 1181 n.1 ("[Defendant] waived these

arguments . . . because he did not raise them on appeal in his opening brief.");

*Wyoming v. Livingston*, 443 F.3d 1211, 1216 (10th Cir. 2006) ("Wyoming did not

address this issue in its opening appellate brief.  The issue is therefore waived.");

*Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174 (10th Cir. 2005) ("The

failure to raise an issue in an opening brief waives that issue.").

By effectively waiving any challenge to the government's *principal* theory

of liability, Mr. Ibarra-Diaz has, for all practical purposes, acknowledged that

there *was* sufficient evidence to convict him as a principal.  "And when there is

sufficient evidence to support a conviction on one theory of guilt on which the

jury was properly instructed, we will not reverse the conviction on the ground that

there was insufficient evidence to convict on an alternative ground on which the

jury was instructed."  *United States v. Ayon Corrales*, 608 F.3d 654, 657 (10th

Cir. 2010); *accord United States v. Hillman*, 642 F.3d 929, 939–40 (10th Cir.

2011).  Thus, we could resolve this issue in the first instance on the basis of Mr.

Ibarra-Diaz's failure to challenge his liability as a principal.  Put another way,

44

given that this aspect of his conviction stands unchallenged, Mr. Ibarra-Diaz's liability for aiding and abetting is essentially irrelevant.

Even if we were to disregard this failure of Mr. Ibarra-Diaz to challenge his conviction as a principal, however, we would conclude that the record is replete with evidence upon which a reasonable jury could convict Mr. Ibarra-Diaz for aiding and abetting. "One need not participate in an important aspect of a crime to be liable as an aider and abettor; participation of a relatively slight moment is sufficient. Even mere words or gestures of encouragement constitute affirmative acts capable of rendering one liable under this theory." *Rufai*, 732 F.3d at 1190 (alteration omitted) (quoting *Bowen*, 527 F.3d at 1078). And we "have repeatedly held that circumstantial evidence may support a jury's reasonable inference of guilty knowledge by the defendant." *Id.* at 1190–91 (quoting *United States v. Rahseparian*, 231 F.3d 1257, 1262 (10th Cir. 2000)).

It is dispositive that a reasonable factfinder could easily infer that Mr. Ibarra-Diaz was involved in setting up the drug transaction at the Towne West shopping mall and, more specifically, aided and abetted Mr. Estrada in possession with intent to distribute methamphetamine. During the initial phone conversation with the detective, Ms. Valeriano-Trejo repeatedly referenced her male associate—whom, based on the totality of the evidence, a reasonable factfinder could conclude was Mr. Ibarra-Diaz. *See* R., Vol. 4, at 1–2 ("Meet up with *us* somewhere?"; "*We* just wanted to know where"; "Well, *we're* way out west";

45

"Ok, yeah, *he* thinks you want to talk to *him* first or you just want . . . *him* be ready?" (emphases added)). And the detective testified that he heard a male voice in the background saying, "see if he wants to talk first." R., Vol. 3, at 39. Shortly thereafter, Mr. Ibarra-Diaz arrived at the Towne West shopping mall with Ms. Valeriano-Trejo as the passenger in his vehicle.

Once they arrived at the mall, Mr. Ibarra-Diaz demonstrated his role as a fully knowledgeable participant through his own statements and actions. After Ms. Valeriano-Trejo inquired about "Ricardo," Mr. Ibarra-Diaz indicated his own knowledge of the planned transaction by explaining, "In a little bit he will bring it." R., Vol. 4, at 8. Then, Ms. Valeriano-Trejo asked Mr. Ibarra-Diaz, "Do I tell him to go over there," to which he replied, "Um-hum." *Id.* The detective interpreted this as Ms. Valeriano-Trejo inquiring of Mr. Ibarra-Diaz whether she should tell the detective to go over to Mr. Estrada to do the drug deal. *See* R., Vol. 3, at 64. Mr. Ibarra-Diaz directed Ms. Valeriano-Trejo to "call him to come over here," presumably referring to Mr. Estrada, and instructed Mr. Estrada to "get it out and bring it in . . . get it and bring it in." *Id.* at 8–9.[16]

---

[16] Among other factors, the jury could rely on the tone and substance of Mr. Ibarra-Diaz's statements on the recording as it considered his role in the drug transaction at the shopping mall. *See United States v. Triana*, 477 F.3d 1189, 1195 (10th Cir. 2007) (reviewing constructive possession finding and noting "that the jury could reasonably have determined from the tone and substance of the audio recording that [Defendant], not [Defendant's significant other in the car], was the dominant person in their relationship").

That officers actually recovered 447.8 grams of methamphetamine from the right wheel well of the Explorer reinforces the conclusion that Mr. Ibarra-Diaz played a major role in orchestrating a significant drug transaction. A reasonable jury could infer that the methamphetamine is the item that Mr. Ibarra-Diaz wanted Mr. Estrada to retrieve. And his flight from the scene once Mr. Estrada suggested that the detective was a police officer gives rise to a reasonable inference that Mr. Ibarra-Diaz had knowledge and culpability related to the drugs found in the vehicle. *See, e.g.*, *United States v. Martinez*, 681 F.2d 1248, 1256 (10th Cir. 1982) (per curiam) ("Traditionally flight has been viewed as an admission by conduct which expresses consciousness of guilt.").

Moreover, Mr. Ibarra-Diaz's argument that they never explicitly stated they were talking about drugs is unavailing. *See, e.g.*, *Cesareo-Ayala*, 576 F.3d at 1126 (finding use of vague words like "stuff" sufficient to support possession charge); *Ramirez*, 479 F.3d at 1251 ("Although [Defendants] speak in vague phrases, 'this guy,' 'the things,' 'some stuff,' a jury could reasonably infer that in these calls [Defendant] committed to orchestrating the removal of drugs . . . . [T]he reasonable inferences that can be drawn from the phone calls meet the requirement of constructive possession, namely ability to control the contraband . . . .").

Therefore, at the very least, there was ample evidence to convict Mr. Ibarra-Diaz of being an aider and abetter of possession with intent to distribute

47

with respect to the Towne West transaction. And that is enough. We need not go further to assess whether he could have been permissibly convicted as an aider and abetter with respect to the drugs found at his alleged residence, and thus refrain from doing so.

In sum, even were we to disregard Mr. Ibarra-Diaz's fatal waiver of a challenge to his conviction as a principal, we would conclude that a rational factfinder could readily convict him of being an aider and abetter of the charged crime of possession with intent to distribute. Accordingly, we reject Mr. Ibarra-Diaz's sufficiency-of-the-evidence challenge.

### III

For the foregoing reasons, we **AFFIRM** Mr. Ibarra-Diaz's conviction.